621 A.2d 1134

**UPPER CHICHESTER TOWNSHIP, Petitioner,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 20, 1992.

Decided Feb. 11, 1993.

Edward J. Carney, Jr., for petitioner.

Peter Lassi, for respondent.

Before CRAIG, President Judge, COLINS, J., and LORD, Senior Judge.

CRAIG, President Judge.

Upper Chichester Township is appealing an order of the Pennsylvania Labor Relations Board affirming the conclusion of a hearing examiner that the township committed an unfair labor practice by unilaterally amending its police pension resolution to bring it into conformity with the Police Pension Fund Act[1] (Act 600). We affirm the board's order.

The facts of this case are as follows. Since 1965, the township's Resolution No. 65–9 allowed officers to retire at age 55 with 20 years of service. In 1974, the township and the Fraternal Order of Police, Delaware County Lodge No. 27, (FOP), the bargaining representative for the township's police force, included a clause in their collective bargaining agreement that gave the officers the option of retiring at age 50 with 25 years of service, or at age 55 with 20 years of service. In addition, the collective bargaining agreement provided benefits for non-service connected disabilities. These terms remained in each succeeding collective bargaining agreement until 1991.

On May 9, 1991, seven months before the expiration of the 1989–1991 collective bargaining agreement, the township passed Ordinance No. 502, titled, "An Ordinance Establishing a Revised and Restated Pension Plan and Trust for the Police Officers of the Township of Upper Chichester." The new

1. Act of May 29, 1956, P.L. (1955) 1804, *as amended,* 53 P.S. §§ 767–778.

ordinance eliminated the option to retire at age 50 with 25 years of experience, and all non-service connected disability benefits. The township did not bargain with the FOP before enacting Ordinance No. 502.

The FOP brought an unfair labor practice charge against the township for unilaterally changing the pension plan terms. The township argued before the hearing examiner, as it does here, that it did not commit an unfair labor practice because the original 1965 township resolution violated Act 600, which does not allow officers to retire with 25 years of service at age 50, or, under *Chirico v. Newtown Township,* 518 Pa. 572, 544 A.2d 1313 (1988), to receive benefits for non-service connected disabilities under a collective bargaining agreement.

The hearing examiner concluded that the township committed unfair labor practices in violation of sections 6(1)(a) and (e) of the Pennsylvania Labor Relations Act [2] (PLRA) and what is commonly called the Collective Bargaining by Policemen or Firemen Act [3] (Act 111). The township filed exceptions to the hearing examiner's order on February 18, 1992. In a final order issued on March 17, 1992, the board dismissed the township's exceptions and affirmed the hearing examiner's unfair labor practice conclusion.

Now, the township on appeal argues that the board committed an error of law by concluding that it committed an unfair labor practice. The township argues that, when it unilaterally amended its police pension ordinance, it was merely bringing its ordinance into compliance with Act 600, as "directed" by the Auditor General. Furthermore, because this court has held that Act 600 is self-executing, *Perruso v. Township of Palmer,* 141 Pa.Commonwealth Ct. 520, 596 A.2d 292 (1991), the township claims that its enactment of Ordinance No. 502, was merely precautionary, if not redundant. According to the township, the board's decision is in error because labor organizations and local governments are powerless to void an act of the General Assembly by mere contract.

2. Act of June 1, 1937, P.L. 1168, *as amended,* 43 P.S. §§ 211.1–211.39.

3. Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10.

However, a provision to which the township voluntarily agreed during the bargaining process cannot now be objected to by the township on the basis of its illegality. *Fraternal Order of Police v. Hickey*, 499 Pa. 194, 452 A.2d 1005 (1982).

In *Hickey*, the City of Scranton and its police department disputed the validity of a clause first included in their collective bargaining agreement in 1973. The clause required the chief of police to be hired from the ranks of the Scranton police department. Scranton and the police continued to include the clause in their collective bargaining agreements through 1978 without challenging its legality. However, in 1978 a new mayor took office and appointed a chief of police from outside the police department. The FOP instituted mandamus proceedings to force compliance with the collective bargaining agreement.

Scranton argued that it was illegal to bind future administrations by the terms of the 1973 agreement. However, the Pennsylvania Supreme Court held that Scranton's actions violated both the PLRA and Act 111. "To permit a public employer to secure an advantage in the bargaining process by agreeing to a term and subsequently avoid compliance by belatedly asserting that term's illegality is . . . inimical to the integrity of the bargaining process and undermines the harmonious relationship it was designed to foster." *Id.* at 198, 452 A.2d at 1007.

The case before us falls squarely within the Supreme Court's rule in *Hickey*. However, the township argues that the Auditor General's recommendations are a complete defense to the FOP's unfair labor practice charges because the township is subject to pecuniary punishment if it fails to comply with the Auditor General's findings.

However, we can find no case law, nor has the township offered any, that supports its argument that recommendations by the Auditor General excuse the requirement to bargain in good faith. In addition, the Auditor General's recommendations in this case are not threats of imminent litigation. Nor does the Auditor General's report in this case "direct," i.e.,

"order," the township to do anything. The Auditor General's report merely makes recommendations.

Furthermore, there was no reason for the township to believe that it had to take immediate steps to remedy its police pension resolution. The 1989–1991 collective bargaining agreement was only seven months from its expiration, and the parties agree that no employees' pension benefits were affected by the enactment of Ordinance No. 502. No one was scheduled to retire or reach vested status in the remaining months of the collective bargaining agreement, and, apparently, no one incurred a non-service connected disability. Under these circumstances, we see no reason for the township to believe that it was in immediate danger of being penalized and that it needed to act unilaterally.

The township also suggests that the board's order prevents the township from changing the terms of the collective bargaining agreement forever. The language of the board's order expressly refers to the operation of the 1989–1991 collective bargaining agreement, the only agreement then before the board, as follows:

> In view of the foregoing and in order to effectuate the policies of the PLRA and Act 111, the Board,
>
> HEREBY ORDERS AND DIRECTS
>
> that the exceptions filed to the Proposed Decision and Order in the above captioned matter be and the same are hereby dismissed, that paragraphs 3(a)–(e) of the Order on page 8 of the Proposed Decision and Order be and the same are hereby modified to direct the Township to rescind its unilateral action of May 9, 1991, changing the police pension benefits under the 1989–1991 collective bargaining agreement and make whole all employes adversely affected by that unilateral action *for the duration of the 1989–1991 agreement,* and that the Proposed Decision and Order, as modified herein, is hereby made absolute and final. (Emphasis added.)

However, the township appears to be correct insofar as it assumes that the effect of the board's decision with respect to an existing collective bargaining agreement (if one is currently

in force) would have the same effect as the board's decision has with respect to the 1989–1991 agreement. The parties continue to have the duty to bargain, which requires more than merely asserting that the pension plan is illegal. The duty to bargain requires that the pension plan revision sought by the township, which benefits the township because it would be a limiting provision, should be subject to a possible exchange of consideration in favor of the FOP. This exemplifies precisely what is involved in the duty to bargain, e.g., subjecting the receipt of advantages to the possible yielding of concessions.

Accordingly, we conclude that the board's analysis is sound, that the township is not shielded by the recommendations of the Auditor General, and that the board's order must be affirmed.

## ORDER

NOW, February 11, 1993, the order of the Pennsylvania Labor Relations Board, dated March 17, 1992, is affirmed.