**WILKES–BARRE TOWNSHIP,**
Petitioner

v.

**PENNSYLVANIA LABOR
RELATIONS BOARD,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued June 6, 2005.
Decided July 13, 2005.

Bruce J. Phillips, Wilkes–Barre, for petitioner.

Warren R. Mowery, Jr., Harrisburg, for respondent.

Sean T. Welby, Harrisburg, for intervenor, Wilkes–Barre Twp. Police Benevolent Association.

BEFORE: SMITH–RIBNER, J., LEAVITT, J., and JIULIANTE, Senior Judge.

OPINION BY Judge LEAVITT.

■ Wilkes–Barre Township (Township) petitions for review of an order of the Pennsylvania Labor Relations Board (Board) dismissing its exceptions to, and making final, a proposed decision and order of the Board's hearing examiner. In doing so, the Board concluded that the Township had committed unfair labor practices in violation of Sections 6(1)(a) and (e) of the Pennsylvania Labor Relations Act (PLRA)[1] and Act 111 of 1968 (Act 111)[2] by enacting an ordinance that unilaterally altered the pension benefit program of the Township's police officers.

The Wilkes–Barre Township Police Benevolent Association (Association) is the exclusive recognized bargaining representative for the Township's police officers. The Association and the Township have been parties to a succession of collective bargaining agreements that govern, *inter alia*, the officers' pension benefit program. The pension program is further defined by ordinance.

Pennsylvania's Auditor General audited the pension program for the years 1999, 2000 and 2001 and issued a report dated July 19, 2001. The Auditor General's report advised the Township that the pension program failed to comply in several respects with the act commonly known as Act 600.[3] Among the deficiencies identified by the Auditor General was the inclusion of payments made to officers for un-

---

1. Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. § 211.6(1)(a) and (e).

2. Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–217.27. Act 111 grants to police officers and firefighters the right to bargain collectively with their public employers over the terms and conditions of employment. Section 1 of Act 111, 43 P.S. § 217.1. Because Act 111 lacks many of the specific provisions normally found in a collective bargaining statute, our Supreme Court has determined that it is to be read *in pari materia* with the PLRA. *Philadelphia Fire Officers Association v. Pennsylvania Labor Relations Board*, 470 Pa. 550, 555, 369 A.2d 259, 261 (1977). Consequently, unfair labor practice charges regarding violations of Act 111 are brought under the provisions of Section 6 of the PLRA. *Delaware County Lodge # 27, Fraternal Order of Police v. Pennsylvania Labor Relations Board*, 75 Pa.Cmwlth. 192, 461 A.2d 1337, 1338 n. 7 (1983).

3. Act of May 29, 1956, P.L. (1955) 1804, *as amended*, 53 P.S. §§ 761–778. Act 600 authorizes and directs the establishment of pension plans for municipal police officers; governs the administration and management of such funds; requires municipalities to set aside certain funds for the programs; and fixes the percentage of their salary that officers must contribute.

used vacation time in the computation of their monthly retirement benefit. Auditor General Report, Finding No. 3. The Auditor General opined that this aspect of the pension program violated Section 5(c) of Act 600, which provides, in pertinent part, as follows:

> Monthly pension or retirement benefits other than length of service increments shall be computed at one-half the monthly average salary of such member during not more than the last sixty nor less than the last thirty-six months of employment.

53 P.S. § 771(c). While acknowledging that Act 600 does not define "salary," the Auditor General concluded that "based on a line of court opinions ... *the term does not encompass lump-sum payments for leave ... not earned during the pension computation period.*" Auditor General Report, Finding No. 3 (emphasis added). The Auditor General recommended that the Township eliminate this and other aspects of the pension program not authorized by Act 600. *Id.*[4]

In 2002 the Township and the Association began collective bargaining to replace the agreement set to expire on December 31, 2002. In March 2003, the new agreement (CBA), at issue in this case, was executed and became effective on January 1, 2003.[5] Article 23 of the CBA governs pensions and provides, *inter alia,* that upon retirement, "[t]he monthly pension payment benefit shall be set at fifty-five (55) percent of the Officer's average monthly *gross salary* of the last twelve (12) months of full time service." Reproduced Record at 27a (R.R. ———) (emphasis added).[6] The term "gross salary" is not defined in the CBA.

On December 1, 2003, the Township enacted Ordinance No.2003–12 entitled "Ordinance Amending Township of Wilkes–Barre Police Pension Plan Ordinance" (Ordinance). R.R. 1a. The Ordinance provides, *inter alia,* that, for police officers hired prior to January 1, 2003, "monthly pension or retirement benefits other than length of service increments shall be computed at fifty-five percent (55%) of the monthly average *compensation* of such member during the last twelve (12) months of employment...." *Id.* at 2a (emphasis added).[7] The Ordinance defines "compensation" as follows:

---

4. For example, the Auditor General concluded that the CBA, which prescribed a contribution rate of four percent of the officers' annual gross salary, violated Section 6(a) of Act 600, 53 P.S. § 772(a), which requires members to pay into the pension fund an amount equal to not less than five percent nor more than eight percent of their monthly compensation. *See* Auditor General's Report, Finding No. 2. The Auditor General also criticized the lack of any provisions in the program's governing documents regarding credit for an officer's prior intervening military service. *Id.*

5. It expires December 31, 2007.

6. Article 23, Section 1 of the CBA also requires each police officer to contribute four percent of his or her annual gross salary to the pension fund. R.R. 36a. This contribu-

tion shall be reduced to two percent based upon the financial status of the pension fund and actuarial studies. *Id.* Article 23, Section 16 of the CBA provides that any full-time police officer hired after January 1, 2003, "shall receive pension benefits as outlined in Act 600," and under no circumstances shall "receive benefits that are in excess of Act 600 requirements." R.R. 28a. Lieutenant William Clark, vice-president of the Association, later explained that this provision was included "to come into compliance with Act 600 for all new hires for the duration of [the CBA]." N.T. Hearing, 4/21/04, at 17. Benefits would remain the same for officers hired prior to January 1, 2003. *Id.*

7. With respect to officers hired on or after January 1, 2003, the Ordinance provides that monthly pension benefits will be fifty percent (50%) of the officers' monthly average com-

For a policeman hired prior to January 1, 2003, compensation shall be defined as monies received by a participant in each and every month, including base pay, longevity pay, night differential, overtime, and any other increments. This shall be defined as salary for purposes of this Ordinance. Payments made for unused vacation time for the twelve (12) month period prior to retirement will be included in the calculation of compensation for pension calculation purposes. Payments made for accumulated, but unused sick leave shall not be included in the calculation of compensation for pension calculation purposes.

For a policeman hired on or after January 1, 2003, compensation shall be defined as monies received by a participant in each and every month, including base pay, longevity pay, night differential, overtime, and any other increments. This shall also be defined as salary for purposes of this Ordinance. Payments made for accumulated, but unused sick and vacation leave shall not be included in the calculation of compensation for pension calculation purposes.

*Id.*[8]

On December 22, 2003, the Association filed a charge of unfair labor practices with the Board alleging that the Township had violated Act 111 and Section 6(1)(a) and (e) of the PLRA[9] by unilaterally altering, and thereby repudiating, the pension terms agreed to in the CBA. Specifically, the Association challenged the Township's definition of the term "compensation" in the Ordinance, which the Association believed to ascribe a particular meaning to the undefined term "gross salary" that appeared in Article 23 of the CBA. The Association argued that "the parties agreed that the inclusion of pay for all accumulated, but unused, vacation, personal, and compensatory time in the calculation of final salary for pension purposes would not apply to any member hired after January 1, 2003, but would continue to apply to members hired before that date." R.R. 7a.[10] In response, the Township claimed contractual privilege and defended the Ordinance as a legislative response to the recommendations in the Auditor General's report.

A hearing examiner conducted a hearing on the Association's charges and found them to be meritorious. In his proposed decision and order, the hearing examiner explained that the Township had violated its duty to bargain by (1) increasing the officers' contribution rate above the percentage established in the CBA and (2) eliminating the credit for prior military

---

pensation during the last thirty-six months of employment. R.R. 2a.

8. The Ordinance sets member contributions into the police pension fund at "an amount equal to not less than five percent (5%) nor more than eight percent (8%) of compensation." R.R. 2a. The prior pension ordinance established that the member contribution rate was to be in accordance with the amount specified in the CBA. Proposed Decision and Order at 2; Finding of Fact No. 6 (F.F.——).

9. The relevant provisions of Section 6 of the PLRA are as follows:

(1) It shall be an unfair labor practice for an employer—

(a) To interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act.

\* \* \*

(e) To refuse to bargain collectively with the representatives of his employes, subject to the provisions of section seven (a) of this act.

43 P.S. § 211.6.

10. Presumably the Association wished to protect veteran officers who had accrued unused vacation time over a number of years with the expectation that they could "cash out" during the last year of their employment and have their retirement benefit calculated on an artificially high gross salary.

service set forth in Article 23, Section 6 of the CBA. The examiner rejected the Township's contractual privilege defense, finding the Ordinance was directly contrary to the clear language of the CBA. The examiner also rejected the Township's defense that it was simply responding to the Auditor General's report, citing this Court's decision in *Upper Chichester Township v. Pennsylvania Labor Relations Board*, 153 Pa.Cmwlth. 446, 621 A.2d 1134 (1993).[11] The examiner ordered the Township to rescind the Ordinance and restore the *status quo ante*. The Township filed exceptions with the Board.

■ On review, the Board found, *inter alia*, that the Ordinance unilaterally ascribed a certain meaning to "gross salary," a term undefined in the CBA.[12] The Board concluded that the Township had violated Act 111 and Section 6(1)(a) and (e) of the PLRA by unilaterally altering the contractual pension provisions with regard to officers hired before January 1, 2003, without first bargaining with the Association. Accordingly, the Board dismissed the Township's exceptions and made the examiner's proposed decision and order absolute and final. The Township now petitions for this Court's review and raises two issues, one pertaining to the Board's authority and the other challenging the Board's remedy.[13]

■ The Township first argues that the Association sought an "interpretation" of the CBA, which does not define "gross salary" and which contains no provisions for including unused compensatory, personal and/or vacation time in the calculation of final salary for pension purposes. The Township avers that the Board exceeded its authority by interpreting the CBA, and, moreover, that it had a "sound arguable basis" for enacting the Ordinance.

■ With respect to the proper role of the Board in labor disputes, this Court has explained that the Board "exists to remedy violations of statute, *i.e.*, unfair labor practices, and not violations of contract." *Pennsylvania State Troopers Association v. Pennsylvania Labor Relations Board*, 761 A.2d 645, 649 (Pa.Cmwlth.2000). Where a breach of contract is alleged, it should be resolved by an arbitrator using the grievance procedure set forth in the parties' collective bargaining agreement. *Id.* However, the Board is empowered to review an agreement to determine whether the employer clearly has repudiated its provisions because such a repudiation may constitute both an unfair labor practice and a grievance. *Id.*

In this case, the Association alleged just such a repudiation of the terms of the CBA. Specification of Charges ¶ 7; R.R. 7a—8a. It did not allege a breach of

11. *See* n. 16, *infra*.

12. Contrary to the examiner's determination, the Board found no unfair labor practice with regard to the officers' right to purchase non-intervening military time. The Board noted that, since the Ordinance only amended prior ordinances and did not specifically address this issue, the language in the prior ordinances establishing that right was still effective and was identical to Article 23, Section 6 of the CBA.

13. Our scope of review of a final order of the Board is limited to determining whether there was a violation of constitutional rights, whether an error of law was committed or whether the Board's necessary findings are supported by substantial evidence. *Pennsylvania State Troopers Association v. Pennsylvania Labor Relations Board*, 761 A.2d 645, 649 n. 6 (Pa.Cmwlth.2000). It is well established that final orders of the Board are to be affirmed if they are reasonable. *Plumstead Township v. Pennsylvania Labor Relations Board*, 713 A.2d 730, 736 (Pa.Cmwlth.1998).

contract, nor did it seek an interpretation of the CBA. The Board properly reviewed the terms of the CBA to the extent necessary to resolve the Association's unfair labor practice charges.

■■■■ Turning to the Township's "sound arguable basis" defense, it is beyond peradventure that pensions are a mandatory subject of collective bargaining. Section 1 of Act 111, 43 P.S. § 217.1. As such, an employer is barred from acting unilaterally in this area without satisfying the statutory resolution procedure. *Plumstead Township v. Pennsylvania Labor Relations Board*, 713 A.2d 730, 733 (Pa. Cmwlth.1998). The Board, and this Court, recognizes "contractual privilege" as an affirmative defense to an unfair labor practice charge of failure to bargain in good faith. *State Troopers*, 761 A.2d at 651. "The defense calls for the dismissal of such charges where the employer establishes a 'sound arguable basis' in the language of the parties' collective bargaining agreement ... for the claim that the employer's action was permissible under the agreement." *Id. See also Jersey Shore Area Education Association v. Jersey Shore Area School District*, 18 PA. PUB. EMP. R. ¶ 18117 (Final Order 1987) (quoting *NCR Corporation*, 271 NLRB ¶ 1212) ("Where an employer has a sound arguable basis for ascribing a particular meaning to his contract and his action is in accordance with the terms of the contract as he construes it, the NLRB will not enter the dispute to serve the function of arbitrator in determining which party's interpretation is correct.").

The Board properly rejected the Township's contractual privilege defense. Article 23, Section 9 of the CBA sets an officer's monthly pension benefit at fifty-five percent of his or her "monthly gross salary of the last twelve (12) months of full time service." R.R. 27a. Notably, the term "gross salary" is not defined in the CBA. The Ordinance, on the other hand, bases the fifty-five percent contribution on an officer's "monthly average compensation," and specifically defines "compensation" as exclusive of payments made for accumulated but unused sick leave and inclusive of payments for unused vacation time made within the twelve-month period preceding retirement. R.R. 1a–2a. By effectively changing the CBA language from "gross salary" to "compensation," and then defining the latter term, the Township acted unilaterally with respect to a mandatory subject of bargaining—the officers' pension program.

The Board astutely observed a distinction between an employer's application of terms in a collective bargaining agreement, which must have a sound arguable basis in the contract, and an action that attempts to expand contractual terms through unilateral adoption of managerial policies that are not in response to a specific contractual claim and have unit-wide application. In other words, the Township was not merely applying existing contract language to establish the calculation of pension benefits in its Ordinance. Rather, the Township unilaterally prescribed a certain meaning to the contractual language that is applicable to all bargaining unit members, in violation of its bargaining obligations.[14]

14. For this reason we note that the Township's reliance on *North Cornwall Township Police Association v. North Cornwall Township*, 33 PA. PUB. EMP. R. ¶ 33054 (Final Order 2002) is misplaced. In that case, the union and employer included a provision in their collective bargaining agreement authorizing a forty-hour work week consisting of either four ten-hour days or five eight-hour days. When the employer changed from a four-day to a five-day workweek the union filed an unfair labor practice charge claiming a unilateral

■ The Township also argues that the Board's order compels it to commit an illegal act: "to revise the Ordinance such that it violates the terms of Act [600] as determined by the [Auditor] General." Township's Brief at 11. This argument is without merit. First, the Board ordered the Township to *rescind*, not revise, the Ordinance. This was within the Board's broad power to fashion a remedy that will effectuate the purposes of the PLRA and restore the *status quo ante.* Section 8(c) of the PLRA, 43 P.S. § 211.8(c);[15] *Plumstead Township*, 713 A.2d at 736. *See also Borough of Geistown v. Pennsylvania Labor Relations Board*, 679 A.2d 1330, 1333 (Pa.Cmwlth.1996) ("We believe that a local ordinance may not be used as a 'guise' by the Borough to sidestep Act 111...."). Moreover, while it may be true that the CBA pension provisions violate Act 600, this does not excuse the Township from its duty to bargain in good faith. Our Supreme Court, in rejecting a similar argument, has observed:

"Good faith bargaining would require that questions as to the legality of the

proposed terms of a collective bargaining agreement should be resolved by the parties to the agreement at the bargaining table."

* * *

Obviously the statutorily mandated obligation to bargain in good faith is not met by permitting the governmental employer to avoid the performance of a term by questioning its legality after having received the advantages that flowed from the term's acceptance.

*Fraternal Order of Police, E.B. Jermyn Lodge # 2 v. Hickey*, 499 Pa. 194, 198–199, 452 A.2d 1005, 1007–1008 (1982) (quoting *Grottenthaler v. Pennsylvania State Police*, 488 Pa. 19, 25, 410 A.2d 806, 809 (1980)).[16] The Supreme Court's reasoning is especially relevant here given that the Auditor General's report on which the Township relies was dated July 19, 2001. The parties did not commence collective bargaining for the CBA until sometime in 2002. The Township should have raised

---

change in working conditions. The Board dismissed the charge noting that the parties satisfied their statutory duty to bargain by negotiating the contractual scheduling option, which the employer was then free to exercise as a management prerogative. *North Cornwall Township* is, in fact, a good example of the proper application of the "sound arguable basis" defense. The case *sub judice* is distinguishable since the CBA does not define "gross salary" for purposes of calculating pension benefits. The Township, rather than interpreting an existing contractual provision, essentially used its legislative power to write in a definition of its own choosing.

**15.** Section 8(c) of the PLRA provides, in pertinent part, as follows:

If ... the board shall determine that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, the board shall ... issue and cause to be served on such person an order

requiring such person to cease and desist from such unfair labor practice, and to take such reasonable affirmative action ... as will effectuate the policies of this act.
43 P.S. § 211.8(c).

**16.** This Court followed *Hickey* in a case virtually indistinguishable from the one at bar. In *Upper Chichester Township v. Pennsylvania Labor Relations Board*, 153 Pa.Cmwlth. 446, 621 A.2d 1134 (1993), the township unilaterally amended its police pension ordinance after an Auditor General's report identified areas of noncompliance with Act 600. We affirmed the Board's order charging the township with an unfair labor practice. In doing so we noted that mere recommendations by the Auditor General did not excuse the township from its obligation to bargain in good faith. We also reiterated that "a provision to which the township voluntarily agreed during the bargaining process cannot now be objected to by the township on the basis of its illegality." *Id.* at 1135.

any potential conflicts with Act 600 at the bargaining table.

In sum, we find no error by the Board. The Township, by enacting the Ordinance and prescribing a certain meaning to the term "gross salary," repudiated certain key provisions of the CBA. Such unilateral action constituted a violation of the Township's duty to bargain with the Association under Act 111. The Board acted within the scope of its authority by reviewing the relevant provisions of the CBA and fashioned a remedy that will effectuate the purposes of the PLRA and restore the *status quo ante*. Accordingly, the Board's order is affirmed.

## ORDER

AND NOW, this 13th day of July, 2005, the final order of the Pennsylvania Labor Relations Board in the above-captioned matter, dated November 16, 2004, is hereby AFFIRMED.