**BOROUGH OF MAHANOY CITY**

v.

**MAHANOY CITY POLICE DEPARTMENT,**
Appellant.

Commonwealth Court of Pennsylvania.

Argued April 7, 2008.

Decided May 12, 2008.

Anthony M. Caputo, Harrisburg, for appellant.

Scott E. Blissman, Philadelphia, for appellee.

BEFORE: McGINLEY, Judge, PELLEGRINI, Judge, and LEAVITT, Judge.

OPINION BY Judge PELLEGRINI.

The Mahanoy City Police Department (Union) appeals from an order of the Court of Common Pleas of Schuylkill County (trial court) vacating the decision of the arbitrator granting a disability pension to Police Officer William J. McGinn (Officer McGinn). Because the trial court erred in finding that the arbitrator exceeded his authority by granting a disability pension when Officer McGinn had not met the eligibility requirements contained in the Police Pension Act[1] requiring an honorable discharge from employment at the time he requested a disability pension, and there is no requirement that a police officer be eligible to receive workers' compensation benefits to receive a disability pension, we reinstate the arbitrator's award.

Officer McGinn was hired as a part-time police officer by the Borough of Mahanoy City (Borough) in May 1993 and was appointed to a full-time position in March 1998. On August 27, 2002, he was working for the Borough in his capacity as a police officer when he was dispatched to assist other police agencies looking for a suspect involved in a shooting. When he arrived at the scene, the suspect began shooting at Officer McGinn who returned gunfire and shot seven rounds at the suspect. The suspect eventually fell to the ground at which time Officer McGinn kicked his gun away. When Officer McGinn approached him to take him into custody, the suspect jumped up and ran. Officer McGinn fired three rounds, and the suspect went down again. When the suspect reached in his waistband, another police officer yelled that the suspect had another gun. Officer McGinn fired two more rounds at the suspect who no longer moved. The suspect was then taken into custody.

The next day, Officer McGinn participated in a group counseling session with a psychiatrist and other law enforcement members involved in the shooting. Sometime in August or September 2003, Officer McGinn developed sleeping problems, had nightmares, had strained relationships with his wife and daughter, had vision problems seeing blind or black spots, and suffered from severe headaches. In October 2003, Officer McGinn lost his temper and chased his wife with a circular saw. He sought medical care from his family physician which provided little relief. From April 22, 2004, until July 2004, he was treated in the Hershey Medical Center, Department of Neurology. He obtained no relief from his symptoms from the center, but the neurologists there recommended assistance from a psychologist. Officer McGinn sought treatment from Paul K. Gross, M.D. (Dr. Gross), a board certified psychiatrist who he began treating with and who prescribed several antidepressants and anti-anxiety medications. Dr. Gross opined that Officer McGinn suffered from post-traumatic stress disorder that was causally related to the shooting on August 27, 2002. He further opined that Officer McGinn's disability was a permanent condition.

1. Act of May 29, 1956, P.L. (1955) 1804, as amended, 53 P.S. §§ 767–778.

Because Officer McGinn submitted a request for a disability pension pursuant to Article 8–3, Section 6 of the Collective Bargaining Agreement (CBA), which entitled him to a pension due to his disability, and the Borough denied his request, the Union filed a grievance which resulted in an Act 111 [2] grievance arbitration hearing. The issues before the arbitrator were whether the Borough violated Article 8–3, Section 6 of the CBA by denying Officer McGinn's request for a disability pension, and, if so, what the remedy should be.

At the hearing, Officer McGinn testified about the incident on August 27, 2002, and the ensuing difficulties which caused his permanent disability. He offered the medical report of Dr. Gross and a psychiatric evaluation of Asama Badar, M.D., the attending psychiatrist with The RedCo Group Behavioral Health Services, in support of the diagnosis of post-traumatic stress disorder. The Borough provided no medical evidence regarding Officer McGinn's diagnosis or causation. Finding Officer McGinn credible and the medical evidence unequivocal, the arbitrator determined that Officer McGinn became totally and permanently disabled as a result of the service-connected incident within the meaning of the Police Pension Act and the CBA on February 4, 2005, and the Borough had violated Article 8–3, Section 6 of the CBA by denying his request for a disability pension. The arbitrator then ordered the Borough to begin paying Officer McGinn a disability pension retroactive to February 4, 2005.[3]

The Borough appealed to the trial court requesting that it vacate the arbitrator's award because Officer McGinn was not eligible to receive a disability pension. The Borough argued that he had not proven that he suffered a mental injury as a result of the work-related event which constituted abnormal working conditions. It also raised an issue that was not discussed by the arbitrator—that Officer McGinn had not met the statutory requirements of proving that he was honorably discharged as required by Section 1(a)(2) of Police Pension Act, 53 P.S. § 767(a)(2).[4] The trial court vacated the award because there was no authority for the arbitrator to award a disability pension until Officer McGinn was honorably discharged. It did not address the issue of whether a claimant had to be eligible for workers' compensation to be eligible for a disability pension. This appeal by the Union followed.[5]

---

**2.** Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–217.10. Act 111 governs collective bargaining between public employers and their police and fire departments.

**3.** In making his award, the arbitrator also relied upon Article 9–1, Section 1 of the CBA, which provides:

Grievances are limited to matters involving interpretation of this agreement as well as all matters of discipline.

He also relied upon Article 9–1, Section 3, Step 4 of the CBA, which provides:

The arbitrator shall not add to, subtract from, or modify the provisions of this agreement, or of any arbitration awards. The arbitrator shall confine himself to the precise issues submitted for arbitration. The arbitrator has no authority to determine any other issues not submitted to him, nor

does the arbitrator have the authority to mandate a change in the law.

**4.** 53 P.S. § 767(a)(2) provides:

Such fund shall be under the direction of the governing body of the borough, town, township or regional police department, and applied under such regulations as such governing body, by ordinance or resolution, may prescribe for the benefit of such members of the police force as shall receive *honorable discharge therefrom by reason of age and service, or disability* .... (Emphasis added.)

**5.** Our review of a grievance arbitration award is in the narrow certiorari test; this Court may only consider questions regarding the arbitrator's jurisdiction; the regularity of the

The Union contends that the trial court incorrectly required Officer McGinn to prove that he was honorably discharged pursuant to the Police Pension Act in order to receive a disability pension because such a requirement is contrary to the express terms of the CBA.[6] In essence, the question is whether that requirement—that a police officer be honorably discharged—makes it illegal for the arbitrator to award a disability pension.

"[I]t is beyond peradventure that [police] pensions are a mandatory subject of collective bargaining. Section 1 of Act 111, 43 P.S. § 217.1."[7] *Wilkes–Barre Township v. Pennsylvania Labor Relations Board,* 878 A.2d 977, 983 (Pa. Cmwlth.2005). *See also Norcini v. City of Coatesville,* 915 A.2d 1243 (Pa.Cmwlth. 2007) (police officer did not have individual right to reject disability pension provisions set forth in negotiated collective bargaining agreement in favor of allegedly greater retirement benefit provided by the Pension Act.) In Article 8–3, Section 6 of the CBA, the Borough and the Union agreed to the following regarding a disability pension:

> Should an officer become disabled due to a work-related injury, then he/she shall collect a pension calculated at the rate of one hundred percent (100%) of his/her salary at the time the disability was incurred.

■ Nothing in this provision requires that an employee be honorably discharged to receive a pension; all that it requires is that the officer be disabled due to his employment. Because pension matters are negotiable unless otherwise removed from bargaining by the General Assembly, the parties were free to negotiate a CBA that removed the provision that an honorable discharge had to be awarded before a party could receive a work-related disability pension.[8]

■ Moreover, even if we assume that the Police Pension Act requirement that an officer receive an honorable discharge was not subject to bargaining, that would not lead to a different conclusion. A public employer who voluntarily agrees to

---

proceedings; questions of excess of the arbitrator's powers and constitutional questions. *Pennsylvania State Police v. Pennsylvania State Troopers' Association,* 540 Pa. 66, 656 A.2d 83 (1995). The only issue here is whether the arbitrator exceeded his power.

6. While we will go on to address this issue, we are a bit *non-plussed* why the issue of whether he has received an honorable discharge still remains an issue in this case. First, this issue appears not to have been raised before the arbitrator because it is not mentioned at all in his decision. Second, it does not appear to be a determinative issue. No one is contending that Officer McGinn is not entitled to an honorable discharge—in fact, the Borough attempted to give him one but Officer McGinn opposed it because if he had accepted an honorable discharge, he would no longer be entitled to employee benefits, and the Borough would continue to deny him benefits claiming he was not entitled to

workers' compensation benefits because his disability was due to "abnormal working conditions." *See City of Philadelphia v. Civil Service Commission of City of Philadelphia,* 565 Pa. 265, 772 A.2d 962 (2001).

7. Section 1 of Act 111 provides that police have the right to bargain collectively with their public employers concerning "the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits ..." 43 P.S. § 217.1.

8. To the extent that provision was enacted to prevent individuals from being eligible for a pension because they breached their duty to the public, the provision has been supplanted by the Public Employee Pension Forfeiture Act, Act of July 8, 1978, *as amended,* 43 P.S. §§ 1311–1315. *See Mazzo v. Board of Pensions and Retirement of City of Philadelphia,* 531 Pa. 78, 611 A.2d 193 (1992).

a provision in a collective bargaining agreement may not later object to that provision on the basis of illegality. *Fraternal Order of Police v. Hickey*, 499 Pa. 194, 452 A.2d 1005 (1982). As we explained in *Upper Chichester Township v. Pennsylvania Labor Relations Board*, 153 Pa. Cmwlth. 446, 621 A.2d 1134, 1135 (1993), "To permit a public employer to secure an advantage in the bargaining process by agreeing to a term and subsequently avoid compliance by belatedly asserting the term's illegality is ... inimical to the integrity of the bargaining process and undermines the harmonious relationship it was designed to foster." Because it voluntarily agreed to Article 8–3, Section 6 of the CBA, the Borough cannot now complain that the provision is illegal.

Even though an honorable discharge was not required, the Borough contends that the arbitrator's awarding of a disability pension still should be vacated because Officer McGinn does not qualify for a disability pension as he does not meet the legal standard to qualify for workers' compensation benefits under the Pennsylvania Workers' Compensation Act (Act).[9] It argues that the Pennsylvania Municipal Retirement Law (PMRL)[10] controls, and under the PMRL, "service connected disability" is defined as:

> Total and permanent disability of a member prior to eligibility for superannuation retirement resulting from a condition arising out of and incurred in the

course of his employment, and which is compensable under the applicable provisions of the act of June 2, 1915 (P.L. 736, No. 338), known as "The Pennsylvania Workmen's Compensation Act," or the act of June 21, 1939 (P.L. 566, No. 284), known as "The Pennsylvania Occupational Disease Act."

53 P.S. § 881.102.

Therefore, if the Borough had been a participant in the Pennsylvania Municipal Retirement System subject to the PMRL, Officer McGinn would have had to qualify for workers' compensation benefits in order to qualify for a disability pension. However, the Borough is not a PMRL participant, but rather, it maintains a Police Pension Act plan and receipt of workers' compensation benefits is not a prerequisite either in the CBA or the Police Pension Act's disability pension benefit provisions.[11]

Because the CBA did not contain any language regarding an honorable discharge or a requirement that an officer be eligible to receive workers' compensation, the arbitrator, deciding the matter presented, did not exceed his powers by awarding Officer McGinn a work-related disability pension. Accordingly, the order of the trial court is reversed, and the award of the arbitrator is reinstated.

Judge LEAVITT concurs in the result only.

9. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2708.

10. Act of February 1, 1974, P.L. 34, *as amended*, 53 P.S. §§ 881.101–881.305.

11. At oral argument, the Borough contended that we should engraft into Article 8–3, Section 6 of the CBA a requirement that an officer must be entitled to workers' compensation benefits in order to be entitled to a work-related disability pension. It argues

that we have applied workers' compensation benefit principles to the resolution of Heart and Lung benefits and benefits under the Philadelphia Civil Service Ordinance, so it would be appropriate to apply those principles to determine whether a party is eligible for work-related disability benefits under Act 111. We decline to do so because, among many other reasons, we do not rewrite collective bargaining agreements that the parties have freely entered.

## ORDER

AND NOW, this *12th* day of *May*, 2008, the order of the Court of Common Pleas of Schuylkill County, dated June 15, 2007, is reversed, and the award of the arbitrator dated May 26, 2006, is reinstated.