# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chester Upland School District,        :
                   Petitioner    :
                                   :
          v.                 :   No. 2599 C.D. 2015
                                   :   Argued: October 17, 2016
Pennsylvania Labor Relations Board,  :
                   Respondent  :


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge

**OPINION**
**BY JUDGE SIMPSON**              **FILED: November 16, 2016**

In this labor relations case, the Chester Upland School District (District) petitions for review of a Final Order of the Pennsylvania Labor Relations Board (Board) that determined the District committed unfair labor practices within the meaning of Sections 1201(a)(1) (interfering with employee rights) and (a)(5) (refusing to bargain collectively in good faith) of the Public Employe Relations Act (PERA),[1] 43 P.S. §§1101.1201(a)(1), (5). The Board's order also required that the District rescind an attendance and punctuality policy it unilaterally imposed during the 2013-14 school year after the June 30, 2013 expiration of the District's respective collective bargaining agreements (CBAs) with the Chester Upland Educational Association, PSEA/NEA, and the Chester Upland Educational Support Personnel Association, PSEA/NEA (collectively, Unions). The District contends

---

[1] Act of July 23, 1970, P.L. 563, as amended, 43 P.S. §§1101.101-1101.2301.

the Board erred in determining it committed unfair labor practices by implementing its new policy. For the reasons that follow, we affirm.

## I. Background
### A. Generally

The Board found the following pertinent facts. The District and the Unions are parties to respective CBAs that expired on June 30, 2013. In August 2013, the District notified its employees of a new attendance and punctuality policy. The Unions responded with a letter asserting the new policy changed the terms and conditions of employment and therefore constituted a mandatory subject of bargaining that must be agreed upon by both parties prior to implementation.

In October 2013, the Unions objected to the new policy on the basis that it was a mandatory subject of bargaining. The District, however, disagreed. During collective bargaining negotiations in October and November 2013, the District took the position that the policy merely explained how absences would be tracked, and that the District did not alter the way employees could use sick leave or change any of the disciplinary consequences associated with absences. In particular, the District asserted that discipline applied under the new policy is not any different than the discipline that could have been applied prior to the adoption of the new policy. The Unions, however, requested that the District stop implementation of the policy until it was properly bargained. Thereafter, the Unions filed unfair labor practice charges asserting that its unilateral implementation of the new policy violated PERA.

2

In January 2014, the Secretary of the Board issued a complaint and notice of a hearing. Prior to the hearing, the parties agreed to submit stipulations and joint exhibits in lieu of testimony.

## B. District's Codified Sick Leave Policy

With regard to sick leave, described as "Attendance Protocol," the policy includes the following features:

**After the third day of absence for personal illness:**

- An informal conversation with your rating officer
- Note on the Attendance Ledger that the conversation took place
- A memo documenting the conversation

**After the fifth day of absence for personal illness:**

- A warning memo and copy of current Attendance Ledger
- Memo and copy of the ledger placed in the school or appropriate office file

**After the seventh day of absence for personal illness:**

- Unsatisfactory Incident Memo
- Conference with the rating officer and union representation
- Documents forwarded for review to the Deputy Superintendent
- The Deputy Superintendent will forward the documents to the official personnel file

**After the ninth day of absence for personal illness:**

- Unsatisfactory Incident Memo
- A conference with the rating officer and union representation

- Documents forwarded to the Deputy Superintendent (instructional) or the Director of Human Resources (non-instructional) for a second level hearing

Joint Ex. No. 3; Reproduced Record (R.R.) at 122a.

## C. Initial Approach: Hearing Examiner's Proposed Decision and Order

Before Hearing Examiner Stephen A. Helmerich (Hearing Examiner), the Unions alleged the District violated Section 1201(a)(5) of the PERA by refusing to bargain with regard to the attendance and punctuality policy before unilaterally implementing the policy. The Unions also alleged the District's failure to collectively bargain over a mandatory subject of bargaining would discourage union membership.

In his Proposed Decision and Order (PDO), Hearing Examiner reasoned that in order to determine whether a particular issue is a subject of mandatory bargaining, the Board must apply a balancing test to determine whether the impact of the issue on the interest of the employee in wages, hours, and other terms and conditions of employment outweighs its probable effect on the basic policy of the school system as a whole. Pa. Labor Relations Bd. v. State College Sch. Dist., 337 A.2d 262 (Pa. 1975). Pursuant to Sections 702 and 703 of PERA, matters of inherent managerial policy and matters in which the employer may not agree because of prohibitive language in another statute are not subjects of mandatory bargaining. 43 P.S. §§1101.702, 1101.703. The Board and the courts also recognize that no violation of the statutory duty to bargain may be found: (1) if there is no change to past practice, Clark Summit Borough, 29 PPER 29126

4

(Final Order 1998); (2) if the change involved a matter of inherent managerial policy, Joint Bargaining Comm. of Pa. Social Servs. Union v. Pa. Labor Relations Bd., 469 A.2d 150 (Pa. 1983); or, (3) if the employer is contractually privileged to make the change, Pa. State Troopers Ass'n v. Pa. Labor Relations Bd., 761 A.2d 645 (Pa. Cmwlth. 2000). The party asserting the commission of an unfair labor practice bears the burden of establishing the violation by substantial and legally credible evidence. Pa. Labor Relations Bd. v. Kaufman Dep't Stores, 29 A.2d 90 (Pa. 1942).

Initially, Hearing Examiner noted, several Board decisions hold that sick leave policies are mandatory subjects of bargaining under the State College test. See Greater Johnstown Educ. Ass'n v. Greater Johnstown Sch. Dist., 19 PPER 19112 (Final Order 1988); Southeast Delco Educ. Ass'n v. Southeast Delco Sch. Dist.; 28 PPER 28013 (Proposed Decision and Order, 1996); Ne. Educ. Intermediate Unit No. 19, 14 PPER 14239 (Proposed Decision and Order, 1983).

However, Hearing Examiner determined the Unions failed to meet their evidentiary burden of showing the District's unilateral implementation of the new attendance and punctuality policy changed the terms and conditions of employment covered by the policy. In support, Hearing Examiner cited the Board's decision in Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia, 31 PPER 31023 (Final Order 2000), where a police union failed to establish that a codification of disciplinary action regarding off-duty activities resulted in a change to the terms and conditions of employment. In that case, the Board determined the union failed to show a change in the *status quo ante* because it could not prove the

5

City did not previously apply the disciplinary action in question to off-duty activities prior to codification. In short, the union failed to show there were any *new sources of discipline* under the new policy.

Applying the City of Philadelphia rationale to the facts in the present case, Hearing Examiner determined the Unions failed to demonstrate by substantial and legally credible evidence that there were any new sources of discipline under the District's new attendance and punctuality policy. PDO at 8. Therefore, Hearing Examiner determined the Unions failed to show the new policy changed the terms and conditions of employment. Id. Hearing Examiner also observed that although the Unions presented evidence that employees were disciplined under the new policy for their absences, they failed to present any evidence that the discipline applied differed from the discipline that would have been applied prior to implementation of the new policy. Id.

Because the Unions failed to meet their evidentiary burden of showing a change in terms or conditions of employment, Hearing Examiner dismissed the Unions' charge of unfair labor practices. PDO at 8. Accordingly, in July 2015, Hearing Examiner issued an order dismissing the Unions' complaints. Id.

### D. Different Approach: Board's Final Order

The Unions timely filed exceptions. See R.R. at 156a-60a. In its Final Order, the Board took a different approach. First, the Board added the two following findings of fact:

28. The CBA between the [Chester Upland Education Association] addressed sick leave in Article XXIII. Article XXIII(A) provides as follows:

All bargaining unit members employed shall be entitled to eleven (11) sick leave days each school year as of the first official day of said school year whether or not they report for duty on that day. Unused sick leave days shall be accumulated from year to year with no maximum limit.

29. The CBA between the [Chester Upland Educational Support Personnel Association] addressed sick leave in Article XIX. Article XIX provides as follows:

Each full-time non-probationary employee shall be entitled to eleven (11) sick days per year which shall accrue as of July 1 of each year. New full-time non-probationary employees shall accrue sick leave on the basis of one (1) sick day for each month worked which shall be retroactive to the date of employment upon completion of probation. Employees shall be required to submit a doctor's note after three consecutive days of absence for illness.

Final Order at 1-2 (Findings of Fact No. 28, 29).

Second, the Board took a different approach to its reasoning. Generally, the Board noted, a complainant bears the burden of proof on a charge of unfair labor practices alleging a change in wages, hours or working conditions. However, the Board and this Court also recognize that where an employer issues a unit-wide policy unilaterally altering or defining the terms in a CBA, the complainant establishes a *prima facie* case of failure to bargain in good faith. Wilkes-Barre Township v. Pa. Labor Relations Bd., 878 A.2d 977 (Pa. Cmwlth. 2005). Further, where an employer's unilaterally imposed policy differs from the

7

express words of the CBA, the burden of proving that there is, in actuality, no change with respect to the application of negotiated terms and conditions of employment lies with the *employer* as a defense to the charge. Springfield Educ. Ass'n v. Springfield Sch. Dist., PERA-C-04-83-E (Proposed Decision and Order, 2005); Sto-Rox Educ. Ass'n v. Sto-Rx Sch. Dist., 34 PPER 67 (Proposed Decision and Order, 2003).

Here, the Board observed, the stipulated evidence established that the District's new attendance and punctuality policy differed from the express terms of the CBAs with respect to employees' sick leave entitlement and usage. Therefore, the Board reasoned, the Unions satisfied their burden of proving an unlawful unilateral change to negotiated working conditions for purposes of Section 1201(a)(5) of PERA (refusal to bargain collectively). As such, the burden of proof shifted to the District to defend against the charge by establishing that implementation of the new policy effected no actual change to the contract terms because application of the policy was consistent with binding past practices regarding sick leave and discipline. Final Order at 4.

The Board noted the District stipulated it did not impose any discipline on any Union employee different from that which *could* have been imposed prior to the adoption of the new policy. However, the Board noted, that stipulation does not amount to an admission by the Unions that the District imposed discipline for sick leave prior to the implementation of the new policy. Also, the stipulation does not constitute substantial evidence that the District had, in fact, imposed discipline prior to implementation of the new policy.

8

In short, the Board reasoned, in the absence of substantial evidence showing a past practice of issuing similar discipline under the CBAs for the employees' use of sick leave, the District failed to establish a defense to its unfair labor practice violations under Sections 1201(a)(1) (interfering with employees' rights under PERA) and 1201(a)(5) (refusal to bargain collectively) of PERA.

Therefore, the Board sustained the Unions' exceptions and vacated Hearing Examiner's Proposed Order. The Board also directed the District to cease and desist from its unfair labor practices. Further, the District must rescind the new attendance and punctuality policy and restore the *status quo ante*; rescind any discipline imposed on employees under the new policy; and, make the employees whole for any lost wages or benefits resulting from said discipline. The District petitions for review.[2]

## II. Discussion
### A. Argument
#### 1. Legal Standard

The District contends the Board erred in determining it committed unfair labor practices by implementing the new policy. The District first claims the Board applied an incorrect legal standard by shifting the burden of proof to

---

[2] Our review of a final order of the Board is limited to determining whether the Board's necessary findings of fact are supported by substantial evidence, whether the Board erred as a matter of law, committed a procedural irregularity, or violated any constitutional rights. Lancaster Cnty. v. Pa. Labor Relations Bd., 124 A.3d 1269 (Pa. 2015). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. However, substantial evidence is more than a mere scintilla, it must do more than create a suspicion of the fact to be established. Id.

establish an unfair labor practice from the Unions as complainant to the District as the respondent. In unfair labor practice proceedings, the burden of proof is on the complainant. Kaufman Dep't Stores. Therefore, the District asserts, the Board erred in shifting the burden of proof on the basis that the District unilaterally implemented a unit-wide policy altering or defining the negotiated terms of the CBA. Thus, assuming the burden of proof remained with the Unions, the District argues the Unions failed to produce any evidence that the District imposed any discipline under the new policy that it did not impose under the CBA.

The District also asserts the Board erred in finding that the difference between the new policy and the express terms of the CBAs with respect to sick leave entitlement and usage constituted substantial evidence and established the Unions' *prima facie* case supporting an unfair labor practice charge of failure to bargain in good faith. The new policy and the CBAs each provided for 11 days of sick leave per year.

The District further argues the Board's reliance on Wilkes-Barre Township is misplaced. The Board maintains there was no shifting of the burden in Wilkes-Barre Township, and the Court explained that the role of the Board is to remedy violations of statutes (*e.g.*, unfair labor practices under PERA), not violations or breaches of contract. Rather, the Board is empowered to review an agreement to determine whether the employer repudiated the agreement's terms. Id. Such repudiation may constitute an unfair labor practice and give rise to a grievance. Id.

In particular, the District asserts, a review of the new policy and the sick leave provisions of the CBAs indicate that in adopting the new policy, the District did not repudiate or reject the terms of the CBAs. Under the Board's rationale, the District argues, any change in a policy remotely related to the terms in the CBAs, no matter how insubstantial, would shift the burden of proof to the employer to demonstrate there is no factual change to the policy. In other words, the District asserts, if an employer implements a policy that relates at all to the language of the CBA without bargaining on the matter, it would have committed an unfair labor practice.

The District argues this rigid reading of the law is arbitrary and unreasonable. In addition, it is not supported by appellate court decisions. Rather, the case law states the employer's implementation of the policy must amount to an actual repudiation of the contract.

Here, the District argues, by no stretch of the imagination can its new policy be read as a repudiation of the sick-day provisions of the CBAs. The new policy did not reduce the amount of 11 cumulative sick days. Rather, the policy provides guidance on how the attendance and sick leave are to be tracked and monitored. The CBAs did not address the procedure for tracking and monitoring the 11 days of sick leave permitted.

Further, the District argues, the Unions presented no evidence that the District implemented a policy differing from the District's past practice.

Therefore, the District maintains it is irrational for the Board to impose that burden on the District.

## 2. Managerial Prerogative

The District also contends the ultimate issue in this case is whether the new policy concerns a mandatory subject of bargaining or falls within the District's management prerogative. The District asserts that when addressing topics which straddle the boundary of mandatory subjects of bargaining and managerial prerogatives, the proper approach is to inquire whether collective bargaining over the topic would infringe upon the public employer's managerial responsibilities. Borough of Ellwood City v. Pa Labor Relations Bd., 998 A.2d 589 (Pa. 2010). If so, it will be considered a managerial prerogative not subject to collective bargaining. Id. If not, the topic is subject to mandatory collective bargaining. Id. Here, the District asserts the Board's conclusion that the District's unilateral implementation of the new policy established a *prima facie* case of refusal to bargain utterly disregards the mandate of Ellwood City that a determination first be made as to whether the District, in adopting the new policy, was properly exercising its managerial prerogative.

To that end, the District asserts it has an obligation to the public to provide continuous instruction to its students. Thus, it is a matter of the highest public concern that teachers and other school employees show up to work and not create a disruption of the educational process. Continued or long-term absences require additional planning and the hiring of substitute personnel. Otherwise,

12

students will suffer a loss of instructional time and disruption of the learning process.

The District further points out the courts recognize that in public employment, certain areas must remain under the employer's prerogative. See Chambersburg Area Sch. Dist. v. Pa. Labor Relations Bd., 430 A.2d 740 (Pa. Cmwlth. 1988) (school's right to unilaterally prohibit smoking is an inherently managerial prerogative under State College balancing test); PSSU Local 668, SEIU, AFL-CIO, CLC v. Dep't of Pub. Welfare, PERA-C-98-353-E (Final Order 1999) (under State College balancing test, evidence did not show dress code policy's impact on employee's substantial interests in the professional delivery of services).

In this matter, the District maintains it has the right, and even a duty, to the public to inquire into its employee's absences under certain circumstances. It owes that obligation to the students and their parents. If an employee is absent because of sickness for an extended period, the District must determine what corrective measures or assistance, if any, the District can render to return the employee to the schools.

**B. Analysis**

In its Final Order, the Board determined the District committed unfair labor practices under Section 1201(a) (1) and (5) of PERA by unilaterally implementing its new attendance and punctuality policy, which differed from the

13

employees' negotiated sick leave benefits under their respective CBAs. Wilkes-Barre Twp. In explaining its decision, the Board stated (with emphasis added):

> Where an employer's unilaterally imposed policy differs from the express words of a [CBA], the burden of proving that there is in fact no change with respect to the application of negotiated terms and conditions of employment lies with the respondent as a defense to the charge. *E.g.* Springfield Education Association v. Springfield School District, PERA-C-04-83-E (Proposed Decision and Order, 2005); Sto-Rox Education Association v. Sto-Rox School District, 34 PPER 67 (Proposed Decision and Order, 2003).

> Because the stipulated evidence established that the District's Policy differs from the express terms of the CBAs with respect to employes' sick leave entitlement and usage, [the Unions] satisfied their burden of proving an unlawful unilateral change to negotiated working conditions under Section 1201(a)(5) of PERA. As such, the burden of proof shifted to the District to defend against the charge by establishing, through evidence, testimony or stipulations, that its unilaterally implemented Policy effected no actual change to the contract terms because application of the Policy was consistent with a binding past practice regarding sick leave usage and discipline.

> Here, the District stipulated that '[i]t is the position of the District that the District has not imposed any discipline on any employee represented by [the Unions] different than the discipline that there **could** have been implemented prior to the adoption of the policy.' (Stipulation 24, emphasis added). That stipulation, as stated, is not an admission by [the Unions] that discipline for sick leave usage was imposed prior to implementation of the Policy; nor is it substantial evidence that the District had in fact imposed discipline for sick leave use prior to the implementation of the Policy. In the absence of substantial evidence introduced by the District to show a past practice of issuing prior similar discipline under

14

the CBAs for employes' sick leave use, the District has failed to establish a defense to its violation of Section 1201(a)(1) and (5) of PERA. *See* [Springfield Sch. Dist.; Sto-Rox Sch. Dist.]

After a thorough review of the exceptions and all matters of record, [the Unions] have sustained their burden of establishing that the District violated Section 1201(a)(1) and (5) of PERA by unilaterally implementing a Policy that differed from the employes' negotiated sick leave benefits in the CBAs. [Wilkes-Barre Twp.] The exceptions filed by [the Unions] shall therefore be sustained ….

Final Order at 4-5.

## 1. Managerial Prerogative

An administrative agency's interpretation of a statute within its own area of expertise must be given controlling weight unless it is clearly erroneous. Lancaster Cnty. v. Pa. Labor Relations Bd., 124 A.3d 1269 (Pa. 2015). Appreciating the competence and knowledge an agency possesses in its relevant field, an appellate court will not lightly substitute its judgment for that of a body whose expertise makes it better qualified than a court of law to weight the facts. Id. This high level of deference is especially significant in the complex area of labor relations. Id.

Section 1201(a)(5) of PERA provides that public employers commit an unfair labor practice by refusing to collectively bargain in good faith with an employee representative. 43 P.S. §1101.1201(a)(5). In particular, an employer commits an unfair labor practice by making a unilateral change in a subject of mandatory bargaining without prior collective bargaining with the designated

representative. <u>Cnty. of Delaware v. Pa. Labor Relations Bd.</u>, 735 A.2d 131 (Pa. Cmwlth. 1999). To determine whether a specific issue is a subject of mandatory bargaining, the Board must determine whether the impact of the issue on the employee's interests in wages, hours, and other terms and conditions of employment outweighs its effect on the basic policies of the school district as a whole. <u>State College</u>; <u>Cnty. of Delaware</u>.

Here, both Hearing Examiner and the Board determined the District's implementation of the new attendance and punctuality policy constituted a mandatory subject of collective bargaining under the <u>State College</u> test.

The District contends the Board erred by failing to take into account the mandate of the Supreme Court in <u>Ellwood City</u> to determine whether the District was properly exercising its managerial prerogative in adopting and implementing its new attendance and punctuality policy. In <u>Ellwood City</u>, the Supreme Court recognized that Section 702 of PERA states that public employers shall not be required to bargain over matters of inherent managerial policy including "'such areas of discretion or policy as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, the organizational structure and selection and direction of personnel.'" <u>Ellwood City</u>, 998 A.2d at 599 (quoting Section 702 of PERA). Citing <u>State College</u>, the Court noted that certain topics concern subjects which are essential to a public employer's managing of its employees and the running of its enterprise, but also there are certain matters that directly implicate the public welfare and should be insulated from the give and take of collective bargaining.

16

Affording the rationale in Ellwood City due consideration, we nevertheless discern no error in the Board's application of the State College test to the facts in the present case. There are several reasons for our conclusion. First, the Board has a history of treating sick leave policies as mandatory subjects of collective bargaining under the State College balancing test. See Greater Johnstown Educ. Ass'n; Springfield Sch. Dist.; Sto-Rox Sch. Dist. This is the type of issue where the Board's determination is due deference. Lancaster Cnty.

Second, we agree with the Board's conclusion based on our independent review and on a prior decision of this Court. The District's new policy does not lessen the total amount of sick days allowable. Rather, it now imposes progressive discipline upon employees for using their allotted sick days for personal illness. Given these facts, the unilaterally implemented disciplinary provisions of the new policy distinctly impact the employees' terms and conditions of employment to a greater extent than they affect the basic policies of the school district. This analysis and conclusion are consistent with our decision in a prior appeal from the Board, Abington Transportation Association v. Pennsylvania Labor Relations Board, 570 A.2d 108 (Pa. Cmwlth. 1990) (affirming Board's determination that rules regarding tardiness/absenteeism and absences of three consecutive days fall under the category of mandatory subjects of bargaining rather than the school district's inherent managerial prerogatives). Therefore, we reject the District's argument that implementation of the new policy was exempt from bargaining.

## 2. Legal Standard

In vacating Hearing Examiner's dismissal of the charges, the Board determined the stipulated evidence established the District's new policy differed from the terms of the CBAs with respect to sick leave entitlement and usage. Final Order at 4. Therefore, the Board determined the Unions satisfied their initial burden of proving an unlawful unilateral change to the negotiated working conditions. Id.

We agree. The District's new policy does more than simply monitor and track employees' use of sick leave. Rather, it imposes progressive discipline based on an employees' use of the allotted 11 days. The new policy provides for the issuance of: a memo after three nonconsecutive days; a "warning memo" after the fifth day of absence; an "unsatisfactory incident memo" is placed in the employee's file after the seventh day of absence; and, a second "unsatisfactory incident memo" is placed in the employee's file and the matter is reported to the District's Deputy Superintendent of Human Resources for a hearing after the ninth day of absence. Final Order at 5. Although the parties' respective CBAs provide for disciplinary action based upon just cause, the District's new policy imposes discipline for absences based solely on personal illness. As such, the District's policy unilaterally changes the terms and conditions of employment.

An employer's unilateral implementation of a change in the terms and conditions of employment is an unfair labor practice regardless of whether it takes place during the terms of a CBA, following the expiration of the CBA or during the course of negotiations. Commonwealth v. Pa. Labor Relations Bd., 459 A.2d

452 (Pa. Cmwlth. 1983). Here, the sick leave provisions in the CBAs did not impose any disciplinary steps for the amount of sick leave used. See Final Order, F.F. Nos. 28, 29. As such, the District's new policy, on its face, provided substantial evidence of a unilateral change in the terms and conditions of employment.

As to the burden on the District to respond to the *prima facie* determination of unfair labor practice, we detect no error. Our conclusion is consistent with our prior decision in Wilkes-Barre Township. In Wilkes-Barre Township, this Court, speaking through Judge (now President Judge) Leavitt, addressed the affirmative defense of contractual privilege. The affirmative defense calls for dismissal of a charge of unfair labor practice by unilateral modification where the *employer* establishes a sound arguable basis in the CBA for the claim that the employer's action was permissible under the CBA. Wilkes-Barre Twp., 878 A.2d at 983. However, the sound arguable basis requirement is *not* met by "an action that attempts to expand contractual terms through unilateral adoption of managerial policies that are not in response to a specific contractual claim and have unit-wide application." Id. Since we face a similar dispute here, placing the burden of proof on the District to more fully establish its sound arguable basis in the CBA is consistent with our holding in Wilkes-Barre Township.

We also reject the District's argument that the *Unions* bore the burden of showing there were no past practices regarding the imposition of discipline outside of the express terms of the CBAs. To the contrary, a line of Board decisions indicate the Board regularly relies on the *employer* to establish that a

19

codification of its past practices or unwritten work policies did not constitute a change in terms and conditions of employment so as to constitute an unfair labor practice.  See Pa. State Troopers Ass'n v. Pa. State Police, 36 PPER 67 (Final Order 2005); United Steel Paper Forestry Rubber Mfg. Energy Allied Indus. and Serv. Workers Int'l v. McDonald Borough, 44 PPER 104 (Proposed Decision and Order, 2013); Teamsters Local No. 25 v. Elizabeth Twp., 39 PPER 12 (Proposed Decision and Order, 2008); Sto-Rox Educ. Ass'n.  Rather, an employer's assertion of a past practice is procedurally consistent with a defense to a charge of refusal to bargain.  Fraternal Order of Police, Conservation Police Officers, Lodge No. 114, v. Fish and Boat Comm'n, 42 PPER 48 (Proposed Decision and Order, 2011).

Here, the Board found the stipulated evidence did not establish the District imposed discipline for use of sick leave prior to implementation of the new policy.  Final Order at 4.  Although the District stipulated it could have imposed the same discipline under the sick leave provisions in the CBAs, this is insufficient to establish the District had *in fact* imposed such discipline prior to implementation of the new policy.  Id.  Absent any evidence that a past practice ever actually occurred, there is insufficient evidence that such a practice was accepted by the parties.  Cnty. of Allegheny v. Allegheny Cnty. Prison Emp. Indep. Union, 381 A.2d 849 (Pa. 1978).  Therefore, we discern no error or abuse of discretion in the Board's determination that the District failed to present substantial evidence that the discipline issued under the new policy was consistent with discipline issued under the sick leave provisions of the CBA.

### III. Conclusion

For the above reasons, we detect no error or abuse of discretion in the Board's determination that the District's unilateral implementation of its new attendance and punctuality policy, which differed from the employees' negotiated sick leave benefits in the CBAs, violated Sections 1201(a)(1) and (5) of PERA. Accordingly, we affirm the Board's Final Order.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chester Upland School District,      :
                        Petitioner    :
                                    :
           v.                   :     No. 2599 C.D. 2015
                                    :
Pennsylvania Labor Relations Board,  :
                      Respondent   :

# O R D E R

**AND NOW**, this 16th day of November, 2016, for the reasons stated in the foregoing opinion, the Final Order of the Pennsylvania Labor Relations Board is **AFFIRMED**.

 

 

_____
ROBERT SIMPSON, Judge