**David NORCINI, Appellant.**

v.

**CITY OF COATESVILLE, Coatesville City Police Pension Commission, Coatesville City Police Pension Fund, Paul Janssen, Emelo Belmonte, John Pitcherella, David Griffith, William Chertok, and David Desimone.**

Commonwealth Court of Pennsylvania.

Argued Nov. 14, 2006.

Decided Jan. 23, 2007.

Richard G. Poulson, Philadelphia, for appellant.

William K. Kennedy, Philadelphia, for appellees, City of Coatesville and Coatesville City Police Pension Commission.

BEFORE: McGINLEY, Judge, COHN JUBELIRER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge McGINLEY.

David Norcini (Norcini) appeals from an order of the Court of Common Pleas of Chester County (common pleas court) which denied Norcini's motion for post-trial relief in the form of mandamus. Norcini sought to require the City of Coatesville (City) and the City of Coatesville Police Pension Commission (Commission) to provide him with a 50% in-service disability pension pursuant to the Third Class City Code (Code).[1]

1. Act of June 23, 1931, P.L. 932, *as amended*, 53 P.S. §§ 35101–39701.

Norcini was employed as a police officer by the City of Coatesville Police Department since August of 1996. The City is a City of the Third Class within the meaning of the Code and governed under a home rule charter adopted pursuant to the Home Rule Charter and Optional Plans Law[2]. The Commission is an organization charged with the operation of the police pension fund.

City police officers are represented by the Coatesville Police Officers' Benevolent Association (Association), a labor organization. The Association and the City are parties to a collective bargaining agreement (CBA). The CBA governs wages, hours, and working conditions of Association members including pension and disability benefits.

According to the CBA police officers are eligible for "normal retirement" pension benefits when they reach the age of 50 and have 20 years of service with the City. The normal retirement benefit is a 50% monthly pension. In addition, police officers are eligible for "disability retirement" benefits if they suffer a "total and permanent" service-connected disability. The amount of disability pension varies based on the number of years of service:

| After 5 years of service: | 2.5% of annual salary multiplied by 5 years. |
|---|---|
| After 10 years of service: | 2.5% of annual salary multiplied by 10 years. |
| After 15 years of service: | 2.5% of annual salary multiplied by 15 years. |

Norcini suffered a permanent knee injury in the course of his employment in February of 1999. Norcini retired from the police department on December 31, 2003. He was awarded a service-connected disability pension. Based on his seven years of service Norcini qualified for a service-connected disability pension equal to 12.5% of his final average salary (2.5%

2. 53 Pa.C.S. §§ 2901–2983.

× 5 years of service). Norcini's final average monthly salary was $3,905.42. Therefore, Norcini was eligible for a service-connected disability pension in the amount of $488.18 per month (12.5% × 3,905.42).

Norcini initiated a mandamus action in the common pleas court against the City in June of 2004, and alleged that the City was required to provide him with a 50% service-connected disability pension benefit pursuant to the Code. The court of common pleas issued a decision on October 20, 2005, and concluded that the City was not required to provide the pension benefit Norcini sought because Norcini's pension benefit was calculated pursuant to the CBA in effect at the time of his retirement. Specifically, the Court concluded: "We conclude that where the actuarial soundness of the plan as a whole is not implicated, the terms of a voluntarily agreed to collective bargaining agreement (as opposed to a contract imposed by arbitration) prevail, and therefore plaintiff's claim must fail." Opinion of the Court of Common Pleas, October 20, 2005, 1.n.1; Reproduced Record (R.R.) at 194–195.

Norcini's motion for post-trial relief was opposed by the City and the Commission. By order dated March 8, 2006, the common pleas court denied Norcini's motion for post-trial relief. Norcini appealed and the common pleas court issued an opinion on June 1, 2006, and explained why Norcini's position lacked merit. Norcini seeks this Court's review.

Norcini alleges that 1) the common pleas court erred when it concluded that the CBA between the City and the Association was binding upon Norcini even though the pension benefits provided were inconsistent with the Code and 2) that the Code

required the City to provide an in-service disability pension benefit for disabled police officers that was equal to a full retirement benefit.[3]

Norcini argues that he was not bound by the CBA because it was an agreement voluntarily entered into by the Association and the City, not by him individually. Norcini agrees that the Association and the City were bound by the negotiated CBA, but contends that he was not because he did not individually negotiate or agree to the terms of the CBA; especially where the CBA provided a lesser benefit than that required by the Code. Finally, Norcini contends that he did not waive any statutorily mandated entitlement to disability pension benefits.

Norcini argument fails for several reasons. First, this Court considered a similar argument in *Pennsylvania State Troopers Association v. Pennsylvania State Employes' Retirement Board*, 677 A.2d 1329 (Pa.Cmwlth.1996). In that controversy, individual retirees objected to the implementation of an interest arbitration award because the retirement benefits awarded resulted in a lesser benefit than would be received under the State Retirement Code. This Court determined that:

> We disagree with Petitioner's [Pennsylvania State Troopers Association] position, considering that while active members of the [State Employes' Retirement System], they belonged to an Act 111 collective bargaining unit authorized to enter into binding arbitration on their behalf in a variety of matters, including pension and retirement benefits. Petitioners are bound by the total result negotiated by the union on their behalf and cannot selectively

---

**3.** This Court will not reverse the common pleas court's grant or denial of post-trial motions absent a manifest abuse of discretion or clear error of law. *Borough of Jefferson v. Bracco*, 160 Pa.Cmwlth. 681, 635 A.2d 754 (1993).

choose or reject aspects of a negotiated agreement as they would wish. Accordingly, the Act 111 ... Award is binding upon Petitioners, even though calculation of Claimants' [Joseph B. Barkofsky, George Cyktor, Robert T. Derwin] pensions pursuant to the Award formula yields a less beneficial result than the Retirement Code formula.

*Id.* at 1331.

Second, our Pennsylvania Supreme Court has held that parties may not avoid limitations in a CBA, claiming that it conflicted with the law, after they voluntarily negotiated and agreed to the contracted provisions.[4] *See Grottenthaler v. Pennsylvania State Police,* 488 Pa. 19, 410 A.2d 806 (1980) (where the Supreme Court determined that "a municipality can not avoid the effect of a term of the collective bargaining agreement it had entered into, by asserting that the contract provision was in violation of State law.")

Similarly, in *Pittsburgh Joint Collective Bargaining Committee v. Pittsburgh,* 481 Pa. 66, 391 A.2d 1318 (1978), our Supreme Court explained:

To permit an employer to enter into agreements and include terms ... which raise the expectations of those concerned, and then to subsequently refuse to abide by those provisions on the basis of its lack of capacity would invite discord and distrust and create an atmosphere wherein a harmonious relationship would virtually be impossible to maintain.

Good faith bargaining would require that questions as to the legality of the proposed terms of a collective bargaining agreement should be resolved by the parties to the agreement at the bargaining stage.

Finally, our Pennsylvania Supreme Court in *FOP, E.B. Jermyn Lodge No. 2 v. Hickey,* 499 Pa. 194, 452 A.2d 1005 (1982), concluded that: "To permit a public employer to secure an advantage in the bargaining process by agreeing to a term and subsequently avoid compliance by belatedly asserting that term's illegality is equally inimical to the integrity of the bargaining process and undermines the harmonious relationship it was designed to foster."

**4.** While a party may not assert illegality to avoid compliance with a voluntarily agreed to provision of a CBA, this general rule does not extend to cases where a dispute is resolved in a decision by an arbitrator rather than through a CBA. *Municipality of Monroeville v. Monroeville Police Department Wage Policy Committee,* 767 A.2d 596 (Pa.Cmwlth.2001). For example, in Monroeville, the parties were in the process of negotiating a new CBA when a dispute arose regarding whether municipal pension benefits could exceed those provided for in the statute. The parties reached an impasse so the dispute was submitted for arbitration. The arbitrators decided that the disputed provisions could be included in the new CBA, despite the fact that they were inconsistent with the statutorily defined benefits. Because it was the arbitrators' decision to include the provisions in the CBA, rather than a joint agreement of the parties, this Court determined that the municipality could

challenge the illegality of the provisions. This Court emphasizes the distinction between an illegality dispute involving a voluntarily entered into CBA and a dispute which is submitted and resolved by arbitration. The present controversy involves a provision of a voluntarily agreed to CBA, and therefore, Norcini was estopped from claiming that the disability pension benefit provision was illegal.

In addition, a second exception to the general rule was carved out by our Pennsylvania Supreme Court in *Borough of Ellwood City v. Ellwood City Police Department Wage and Policy Unit,* 573 Pa. 353, 825 A.2d 617, where the Court explained that a collective bargaining agreement may not incorporate a provision which conflicts with a statutory provision if the statute expressly prohibits such conflicts or provides a remedy should a conflict arise. Unfortunately for Norcini this exception also does not apply.

Here, the police pension plan at issue was in place, and outlined in the CBA, at all times during Norcini's employment. Norcini worked within the Association's bargaining unit and was employed pursuant to the provisions and conditions of the CBA. Moreover, the CBA was voluntarily entered into by the parties. Norcini was bound by and benefited from the provisions of the CBA throughout the course of his employment, and was equally bound by the provisions of the CBA at the time of his retirement, including any shortcomings and limitations.

If this Court were to accept Norcini's argument, essentially any officer who is represented by a recognized labor organization which negotiates a CBA would obtain the benefits of the CBA while employed and then upon retirement bring suit to compel the City to provide a greater retirement benefit if it was provided by a statute that existed at the time of his retirement, rather than being bound by the retirement provisions contained in the CBA that directly addressed the terms and conditions of his employment. Here, the police pension plan was in place at all times during the course of Norcini's employment, was outlined in the CBA, and was voluntarily entered into by the City and the Association. Neither party to the CBA, nor Norcini has an individual right to reject to the disability pension provisions set forth in the negotiated CBA. Furthermore, there is neither a provision in the Code which controls or prohibits conflicts with collective bargaining agreements, nor a provision that provides a remedy if a conflict arises.

Next, Norcini contends that cities of the Third Class are required by the Code to provide a service-connected disability pension. Section 4303.2 of the Code, 53 P.S. § 39303.2 [5], provides:

(a) Notwithstanding any provision of this act, any police officer who becomes totally disabled due to injuries sustained in the line of duty shall be deemed to be *fully vested* in the police pension fund, regardless of the actual number of years of credited service, and shall be eligible for immediate *retirement* benefits. (emphasis added)

Based on this section, Norcini argues that the disability pension benefit must be equal to the normal retirement benefit because the Code "speaks to 'full' vesting and 'retirement benefits', as opposed to other, lesser pension benefits." Appellant's Brief p. 20. Norcini asserts that a limited disability benefit was not intended because it was not specified in the service-connected disability pension section, but rather any reference to a benefit was to a "retirement benefit". Because the Code refers to "retirement" and "full" vesting, rather than any type of limited vesting or limited benefit, than the normal retirement benefit must be provided by the City. Under Section 4302 of the Code, 53 P.S. § 39302, a member of the police force shall be eligible for retirement upon at least 20 years of continuous service; and Section 4303 of the Code, 53 P.S. § 39303, provides that the retirement benefit may not exceed fifty percent of a member's final annual pay. Therefore, Norcini contends that he is entitled to 50% of his final annual pay.

In further support of his argument, Norcini referenced the Auditor General of Pennsylvania's "Compliance Audit Report of the City of Coatesville Police Pension Plan," issued in June 2001, which addressed the City of Coatesville's service-connected disability pension provision. Norcini alleges that the Auditor General's report outlined that the City's service-con-

---

**5.** Section 53 P.S. § 39303.2 was added by the Act of October 3, 1988, P.L. 735.

nected disability pension did not comply with the Code because it did not provide a disability pension benefit that was equal to the normal retirement benefit. Compliance Audit Report at 6; R.R. at 164. As such, Norcini contends that he was entitled to the statutorily mandated disability pension benefit because the CBA did not comply with the Code.

Finally, Norcini argues that the City's Home Rule status does not excuse its violation of the Code's disability pension requirements. Norcini relies on Monroeville in support of his argument, where this Court determined:

> Section 2962(c)(5) of the Home Rule Charter and Optional Plans Law provides that a home rule municipality may not 'enact any provision inconsistent with any statute heretofore enacted prior to April 13, 1972, affecting the rights, benefits, or working conditions of any employe of a political subdivision of this Commonwealth.' 53 Pa.C.S. § 2962(c)(5). Although Section 2961 of the Home Rule Charter and Optional Plans Law, 53 Pa.C.S. § 2961, bestows upon a home rule municipality broad municipal powers, Section 2962(c)(5) clearly precludes home rule municipalities from providing pension benefits different from those prescribed in general law including Act 600 which was enacted in 1956.

*Monroeville,* 767 A.2d at 599. Therefore, Norcini argues, that Coatesville's status as a home rule municipality does not excuse its failure to provide disability pension benefits that are inconsistent with those disability pension benefits authorized by statute.

 While this Court agrees with Norcini that the City may not negotiate provisions of a CBA which are inconsistent with statutory provisions pursuant to *Monroeville,* this Court concludes that the holding of that case is inapplicable to the present controversy for a number of reasons. First, this Court does not agree that the City acted illegally or that the disability pension benefit provision was illegal. After a thorough review of the Code, this Court concludes that the language in the statute does not mandate the disability pension benefit Norcini claims. Section 4303 of the Code, 53 P.S. § 39303, does not require a 50% minimum pension benefit. It only mandates that an officer's pension benefit "shall not in any case exceed" 50% of the officer's annual salary. Therefore, the Code sets a ceiling for police pension benefits; it does not set a mandatory minimum benefit as Norcini alleges.

 In addition, the Auditor General's report makes clear that in an attempt to apply *Monroeville* in the most equitable fashion, it would not enforce the decision with regard "to existing retirees or to individuals who began full-time employment before January 24, 2001 (the date *Monroeville* was issued)." Compliance Audit Report at 8; R.R. at 166. Because Norcini began his employment as a police officer in 1996 the negotiated CBA controls the amount of Norcini's service-connected disability pension benefit, an interpretation which is entirely consistent with the Auditor General's bulletin.

Accordingly, the order of the common pleas court is affirmed.

### ORDER

AND NOW, this 23rd day of January, 2007, the order of the Court of Common Pleas of Chester County is affirmed.