# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| William J. Perroz, | : | |
| Appellant | : | |
| | : | No. 1133 C.D. 2015 |
| v. | : | Argued: April 13, 2016 |
| | : | |
| Fox Chapel Borough | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE ROBERT SIMPSON, Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge

**OPINION**
**BY JUDGE SIMPSON**                     **FILED: July 13, 2016**

In this appeal, William J. Perroz (Perroz) asks whether the Court of Common Pleas of Allegheny County[1] (trial court) erred in affirming a decision of the Fox Chapel Borough Council (Borough Council) that denied his application for a disability pension benefit. Perroz argues the trial court erred in: (1) upholding Borough Council's denial of his application for a disability pension benefit; (2) failing to find Borough Council violated his constitutional due process rights by not providing a neutral and detached hearing officer at his disability pension review hearing; and, (3) failing to find Borough Council's denial of his application for a disability pension benefit violated public policy. Upon review, we affirm.

---

[1] The Honorable Michael A. Della Vecchia presided.

## I. Background

Before the trial court, the parties stipulated to the following facts. Fox Chapel Borough (Borough) hired Perroz as a police officer in August 1990. He remained employed by the Borough until his honorable discharge in March 2014.

In 2010, Perroz suffered an on-duty injury to his right shoulder while apprehending a suspect. The injury necessitated medical treatment, and Perroz was unable to work as a police officer for an extended period. Perroz underwent two surgeries on his right shoulder in 2011 and 2012. More particularly, he underwent a rotator cuff repair on his right shoulder in 2011 (first surgery).

Thereafter, Perroz suffered a tear in his deltoid at the repair site as physical therapy progressed in his efforts to return to work as a police officer. He underwent a deltoid repair in 2012 (second surgery). Dr. James P. Bradley, Perroz's treating physician, opined that, as of August 2012, Perroz was unable to return to his job as a full-time police officer.

In March 2014, a workers' compensation judge approved a compromise and release agreement. The Borough then proceeded with Perroz's removal based on a physical injury that precluded his return to work. Ultimately, the Borough honorably discharged Perroz by reason of disability in March 2014. Through a letter from Perroz's then attorney to Borough Council, Perroz applied for a disability pension benefit.

Shortly thereafter, the Borough's Pension Plan Administrator (Plan Administrator) acknowledged receipt of the letter and addressed the applicable

2

deadlines under the Borough's Police Pension Plan (Plan). The Plan Administrator also directed Perroz to the relevant Plan provisions, including the definition of "Total and Permanent Disability" requiring that it "qualifies the Participant for federal social security disability benefits." Joint Stipulation of Facts at ¶10 (citing Certified Record (C.R.), Tab 1, Ex. 2); Reproduced Record (R.R.) at 31. The letter also stated:

> The information submitted by [Perroz], and that which relates to the prior proceedings under the Heart and Lung Act,[2] does not appear to address whether [Perroz] qualifies for 'federal social security disability benefits.' Please provide any information or documents relevant to this issue. As stated above, any additional information may be submitted by March 27, 2014, or you may request a reasonable extension of time for this purpose. Upon review of this letter, please notify me of whether [Perroz] will be submitting additional information and/or requesting more time to do so.

Joint Stipulation of Facts at ¶11 (citing C.R., Tab 1, Ex. 2); R.R. at 32. Perroz's attorney submitted a letter in furtherance of his application for disability pension benefits and included three reports authored by Dr. Bradley.

In May 2014, the Plan Administrator issued a determination that denied Perroz's application for a disability pension benefit. The determination quoted the definition of "Total and Permanent Disability" contained in Article I, Section 1.34 of the Plan and summarized Dr. Bradley's April 2014 report. Section 5.04 of the Plan vests the Plan Administrator with sole discretion to determine whether participants qualify for disability pension retirement. Section 5.02 of the

---

[2] Act of June 28, 1935, P.L. 477, as amended, 53 P.S. §§637–38.

3

Plan states the "Disability Retirement Benefit shall equal 50% of the Member's Salary at the Time the Disability was incurred" (basic rate of pay during the year the disability occurred, Section 1.22 of the Plan), "provided that any member who receives benefits for the same injuries under [federal Social Security Disability] shall have the Participant's disability benefits offset or reduced by the amount of such benefits." Joint Stipulation of Facts at ¶16 (citing C.R., Tab 1, Ex. G); R.R. at 32.

The disability pension Perroz applied for and which the Borough denied would encompass approximately 16 months, March 18, 2014 through August 2015, when Perroz's deferred vested pension benefit would begin. Perroz did not apply for federal Social Security Disability benefits because he did not believe he was eligible. Joint Stipulation of Facts at ¶18 (citing C.R., Tab 1 at 24, 29); R.R. at 33.

The Plan defines "Total and Permanent Disability" as "a condition of physical or mental impairment due to which a participant is unable to perform the usual and customary duties of [e]mployment, which is reasonably expected to continue to be permanent for the remainder of the Participant's lifetime <u>and which qualifies the Participant for federal social security disability benefits</u>." Joint Stipulation of Facts at ¶19 (citing C.R., Tab 1, Exs. 1, G); R.R. at 33 (emphasis added).

The Borough and the Police Department negotiated and entered into a Collective Bargaining Agreement (CBA) in September 2013, which covered the

4

period from January 1, 2014 through December 31, 2017. The 2013 CBA specifically addresses disability pension benefits through the following provision:

> 5. PERMANENT DISABILITY PENSION BENEFITS
>
> Disability Pension Plan benefits shall begin on the date when a pension plan participant is determined by the Plan Administrator to be incapacitated due to total and permanent disability as defined in the pension plans, even if Extended Sick Leave has not been exhausted. Disability Pension Plan benefits shall be in accordance with the provisions set forth in the Pension Plan for Police.

Joint Stipulation of Facts at ¶21 (citing C.R., Tab 1, Ex. I); R.R. at 33-34. The CBA also states: "Each Police Officer shall be entitled to a pension following retirement or permanent disability, subject to the terms and conditions set forth in the official Police Pension Plan of the Borough." Joint Stipulation of Facts at ¶22 (citing C.R., Tab 1, Ex. I); R.R. at 34.

During his employment with the Borough, Perroz served on the police negotiation team every year. Perroz testified that the police bargaining unit never attempted to change the disability definition contained in the Plan.

At all relevant times, the Plan received state aid. Perroz contended the Borough's receipt of state aid invoked the application of the Municipal Police Pension Law,[3] commonly known as Act 600.

---

[3] Act of May 29, 1956, P.L. 1804, as amended, 53 P.S. §§767-778.

Perroz sought review of the Plan Administrator's denial of his disability pension application. A hearing ensued at which both Perroz and the Plan were represented by counsel. The Borough hired Ira Weiss, Esquire, to serve as hearing officer. After the hearing, both parties submitted proposed findings of fact and conclusions of law. Thereafter, Borough Council enacted Resolution 600, which denied Perroz's appeal and sustained the decision of the Plan Administrator denying Perroz's application for a disability pension. Attached to Resolution 600 were the hearing officer's findings of fact, conclusions of law and adjudication. Perroz appealed Borough Council's decision to the trial court.

After briefing and oral argument, the trial court issued an order dismissing Perroz's appeal and affirming Borough Council's decision. In its order, the trial court adopted the parties' joint stipulation of facts. It explained the definition of "disability" in the CBA between Borough Council and its Police Department was binding and the definition of "disability" in Act 600 was not binding. See Norcini v. City of Coatesville, 915 A.2d 1243 (Pa. Cmwlth. 2007); Breeden v. Borough of Crafton, No. SA 11-000582 (C.C.P. Allegheny 2012), aff'd, 57 A.3d 222 (Pa. Cmwlth. 2012). Perroz appealed to this Court, and the trial court directed him to file a concise statement of the errors complained of on appeal, which he did.

Thereafter, the trial court issued an opinion pursuant to Pa. R.A.P. 1925(a). Initially, the trial court explained, because this was an appeal of a decision under the Local Agency Law,[4] its review of Borough Council's decision

---

[4] 2 Pa. C.S. §§551–555; 751–754.

was limited. Where, as here, a full and complete record is made before Borough Council, the trial court was required to affirm the adjudication unless it found the adjudication was in violation of the constitutional rights of the appellant, or not in accordance with law, or the provisions of Subchapter B of Chapter 5 (relating to practice and procedure of local agencies) were violated in the proceedings before Borough Council, or any finding of fact made by Borough Council and necessary to support its adjudication was not supported by substantial evidence. Section 754(b) of the Local Agency Law, 2 Pa. C.S. §754(b).

Here, the trial court explained, Perroz did not specify any error of law or unsupported finding of fact. The trial court observed that Perroz's application for a disability pension was denied based on his failure to meet the Plan's definition of "Total and Permanent Disability" as defined in the parties' CBA, an agreement Perroz negotiated with other members of the police bargaining unit while he was employed as a Borough police officer for two decades.

The trial court explained the 2013 CBA states that each police officer shall be entitled to a pension following retirement or permanent disability, subject to the terms and conditions set forth in the Plan. Further, the Amended Police Pension Plan, adopted by the Borough in 1968, defines Total and Permanent Disability as "a condition of physical or mental impairment due to which a Participant is unable to perform the usual and customary duties of [e]mployment, which is reasonably expected to continue to be permanent for the remainder of the Participant's lifetime and which qualifies the Participant for federal social security

7

disability benefits." Tr. Ct., Slip Op., 8/20/15, at 9 (quoting Joint Stipulation of Facts at ¶19; R.R. at 33) (emphasis added).

Ultimately, the trial court determined that the definition of disability in the CBA was binding and further that the definition of disability in Act 600 was not binding. See Norcini; Breeden. The trial court stated Perroz, along with his police department bargaining unit, negotiated and accepted the disability pension standard that he now claimed to be illegal. The trial court found no illegality or denial of constitutional rights, and it declined Perroz's request to rewrite the CBA between Borough Council and its Police Department.

This matter is now before us for disposition.

## II. Issues

On appeal,[5] Perroz states three issues. First, he argues the trial court erred in upholding Borough Council's denial of his application for disability pension benefits. Next, he maintains the trial court erred in failing to find Borough Council violated his constitutional due process rights by not providing a neutral and detached hearing officer at his disability pension review hearing. Finally, he contends the trial court erred in failing to find Borough Council's denial of his application for disability pension benefits violates public policy.

---

[5] Our review is limited to determining whether an error of law was committed, whether necessary findings of fact were supported by substantial evidence, whether constitutional rights were violated, and whether the procedure before the local agency was contrary to statute. Mulberry Mkt. v. City of Phila., Bd. of License & Inspection Review, 735 A.2d 761 (Pa. Cmwlth. 1999).

8

### III. Discussion
### A. Definition of "Disability"
### 1. Contentions

Perroz first argues Borough Council and the trial court erred in denying his application for disability pension benefits by failing to take into account the controlling and prevailing law as set forth in <u>Ridley Park Police v. Borough of Ridley Park</u>, 524 A.2d 998 (Pa. Cmwlth. 1987). He contends the main issue here is whether he was disabled and what the terms "disabled" or "disability" mean with respect to the disability pension plan. Perroz asserts <u>Ridley Park</u> decided this issue in 1987, and it controls here. According to Perroz, <u>Ridley Park</u> provided a roadmap for future courts to follow in deciding such issues. In following <u>Ridley Park</u>, Perroz maintains, this Court should find he was disabled and was entitled to benefits.

Perroz asserts that in <u>Ridley Park</u>, the borough and the Fraternal Order of Police (FOP) entered into negotiations for a new CBA and reached an impasse over the definition of "disability" for purposes of pension entitlement. The CBA stated that a police officer was entitled to a disability pension if the officer was "permanently and totally disabled from performing police work for the [b]orough." <u>Id.</u> at 999. The FOP wanted to retain that language in the parties' new CBA, while the borough insisted disability be defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." <u>Id.</u> An arbitration panel found in favor of the borough. The FOP appealed to the common pleas court. The common pleas court struck down the panel's definition, and the Borough appealed to this Court on the basis that Act 600 did not prohibit such a definition of disability.

Section 1 of Act 600, 53 P.S. §767, authorized the borough to establish a police pension and prescribe its terms and conditions. To that end, the pension plan was governed by the Borough Code. Section 1190(a)(1) of the Borough Code provided: "No person employed in any police … force of any borough shall be suspended, removed or reduced in rank except for the following reasons … [p]hysical or mental disability affecting his ability to continue in service, in which cases the persons shall receive an honorable discharge from service …." 8 Pa. C.S. §1190(a)(1).

Perroz maintains the borough in <u>Ridley Park</u> argued that police officers covered under the Pennsylvania Municipal Retirement System (PMRS) could retire on a disability pension only if they were unable to engage in any gainful employment, and the PMRS definition of disability should apply to borough officers as well. Perroz maintains this Court rejected that assertion, citing <u>Crawford v. Borough of Lewisburg</u>, 401 A.2d 385 (Pa. Cmwlth. 1979), in which this Court interpreted the language "affecting his ability to continue in service" in the Borough Code to mean that the legislature "intended the disability to be one which rendered the officer incapable of performing <u>his normal duties permanently</u>." <u>Id.</u> at 388 (emphasis added). Thus, Perroz asserts, the Court in <u>Ridley Park</u> concluded that, because the Borough Code controlled, any other definition would be inappropriate.

Perroz argues the pertinent language in Act 600 provides that a borough employing three or more full-time police officers "<u>shall</u> … establish … a police pension fund …. Such fund shall be under the direction of the governing

body of the borough … and applied under such regulations as such governing body … may prescribe for the benefit of <u>such members</u> of the police force as shall receive honorable discharge therefrom by reason of age and service, or <u>disability</u>." 53 P.S. § 767(a)(1), (2) (emphasis added). Perroz asserts Section 1 of Act 600 authorized the borough in <u>Ridley Park</u> to establish a police pension and prescribe its terms and conditions.

Perroz asserts, as this Court stated in <u>Ridley Park</u>, the clear language of Act 600 mandates that all police officers honorably discharged for disability be eligible to receive a pension. Perroz contends Act 600 does not permit the Borough to prescribe its own regulations that would redefine pension eligibility. Thus, as long as the Borough may honorably discharge officers who cannot physically perform police work and accept state aid for funding such pensions, it may not deny an officer his pension simply because he is able to obtain other gainful employment.

Perroz points out that this Court distinguished the central holdings of <u>Ridley Park</u> in <u>Paupst v. Pennsylvania Municipal Retirement Board</u>, 788 A.2d 1067 (Pa. Cmwlth. 2001). The Court in <u>Paupst</u> was tasked with assessing a scenario, on its face, akin to the ones in <u>Ridley Park</u> and the instant appeal. A dispute arose as to the applicable definition of "disability," and whether its meaning was one based on the officer's inability to undertake police work or his inability to undertake any "gainful employment." <u>Id.</u> at 1070. The former definition was based on the Borough Code and CBA, while the latter was based on a separate, binding agreement between the township and PMRS. This Court held

11

that because the officer, through his employer, was bound by an agreement between the township and the PMRS, the PMRS definition of "disability" controlled. Id. at 1070-71. However, Perroz contends, absent a scenario such as that in Paupst, the Ridley Park model controls; the definition of "disability" is governed by the Borough Code and the terms of the CBA.

Just as in Ridley Park, Perroz asserts, his disability pension eligibility is governed by the Borough Code and the terms of the CBA. See 8 Pa. C.S. §1190; R.R. at 33-34. Perroz argues he was injured in the line of duty, resulting in his undisputed and indefinite inability to return to work as a police officer. R.R. at 30-31. As a result, he was honorably discharged for physical disability. R.R. at 31. Perroz does not claim that he is unable to obtain gainful employment, and, more specifically, does not claim that he would qualify for federal social security disability benefits. However, he argues, it is not the language of the Plan that controls, but the mandates of the Borough Code. According to the Borough Code and Act 600, interpreted by this Court in Ridley Park, Perroz, who was honorably discharged for physical disability, is entitled to a disability pension.

Perroz anticipates the Borough will argue there are no statutory restrictions on how "disability" may be defined for purposes of pension entitlement. Therefore, the Borough will assert it may prescribe regulations that would render some officers, honorably discharged from service pursuant to Section 1190 of the Borough Code, ineligible for pension benefits. Perroz maintains this is in direct contravention of Pennsylvania law, and no Pennsylvania court ratified such action in this context. See Ridley Park.

12

Perroz further points out that the hearing officer relied on Norcini. He asserts the issue in that case was not whether the officer qualified for a disability pension under the pension plan language, but rather whether the officer could reject the disability pension he was offered in favor of a greater retirement pension provided by statute. Perroz contends the two factual scenarios and the legal questions posed by the two cases are different. He argues the distinction between that case and the instant one is clear, especially as the Court in Norcini did not distinguish, or even mention, its earlier precedential decision in Ridley Park.

## 2. Analysis

"[I]t is beyond peradventure that [police] pensions are a mandatory subject of collective bargaining. …" Borough of Mahanoy City v. Mahanoy City Police Dep't, 948 A.2d 239, 242 (Pa. Cmwlth. 2008) (quoting Wilkes-Barre Twp. v. Pa. Labor Relations Bd., 878 A.2d 977, 983 (Pa. Cmwlth. 2005)); see also Norcini (police officer did not have individual right to reject disability pension provisions set forth in negotiated CBA in favor of allegedly greater retirement benefit provided by statute).

In addition, it is well-settled that "parties may not avoid limitations in a CBA, claiming that [they] conflicted with the law, after they voluntarily negotiated and agreed to the contracted provisions." Norcini, 915 A.2d at 1246 (citing Grottenthaler v. Pa. State Police, 410 A.2d 806, 809 (Pa. 1980) ("a municipality [can]not avoid the effect of a term of the [CBA] it had entered into, by asserting that the contract provision was in violation of State law.")); see also Pa. State Troopers Ass'n v. Pa. State Employes' Ret. Bd., 677 A.2d 1329, 1331 (Pa. Cmwlth. 1996) ("[p]etitioners are bound by the total result negotiated by the

13

union on their behalf and cannot selectively choose or reject aspects of a negotiated agreement as they would wish. … [T]he ... [a]ward is binding upon [p]etitioners, even though calculation of [the] … pensions pursuant to the [a]ward formula yields a less beneficial result than the Retirement Code[6] formula.").

Similarly, in Pittsburgh Joint Collective Bargaining Committee v. City of Pittsburgh, 391 A.2d 1318, 1322-23 (Pa. 1978), our Supreme Court explained:

> To permit an employer to enter into agreements and include terms ... which raise the expectations of those concerned, and then to subsequently refuse to abide by those provisions on the basis of its lack of capacity would invite discord and distrust and create an atmosphere wherein a harmonious relationship would virtually be impossible to maintain.
>
> Good faith bargaining would require that questions as to the legality of the proposed terms of a [CBA] should be resolved by the parties to the agreement at the bargaining stage.

Moreover, in Fraternal Order of Police, E.B. Jermyn Lodge No. 2 v. Hickey, 452 A.2d 1005, 1007 (Pa. 1982), our Supreme Court stated: "To permit a public employer to secure an advantage in the bargaining process by agreeing to a term and subsequently avoid compliance by belatedly asserting that term's illegality is equally inimical to the integrity of the bargaining process and undermines the harmonious relationship it was designed to foster." See also City of Allentown v. Int'l Ass'n of Fire Fighters Local 302, 122 A.3d 492, 506 (Pa. Cmwlth. 2015) (en banc) ("[T]he City cannot now avoid the application of the

---

[6] State Employes' Retirement Code, 71 Pa. C.S. §§5101-5956.

14

purchase of time provisions of the CBA with respect to [firefighters who already retired under the CBA], but it properly contested its inclusion in the new CBA and its application to current employees in its appeal of the panel's award issued in the instant interest arbitration proceedings."); Borough of Mahanoy City, 948 A.2d at 242-43 ("A public employer who voluntarily agrees to a provision in a [CBA] may not later object to that provision on the basis of illegality."). These principles apply regardless of whether it is the union rather than the public employer which seeks to disavow its bargain. Norcini.

Indeed, in Norcini, we applied the principles outlined above in a situation similar to that presented here. There, Norcini, a retired police officer, challenged the city's calculation of his service-connected disability pension on the ground that the Third Class City Code[7] provided for a greater benefit than that provided for in the parties' negotiated CBA. In rejecting Norcini's appeal, this Court explained (with emphasis added):

> Here, the police pension plan at issue was in place, and outlined in the CBA, at all times during Norcini's employment. Norcini worked within the [a]ssociation's bargaining unit and was employed pursuant to the provisions and conditions of the CBA. Moreover, the CBA was voluntarily entered into by the parties. Norcini was bound by and benefited from the provisions of the CBA throughout the course of his employment, and was equally bound by the provisions of the CBA at the time of his retirement, including any shortcomings and limitations.
>
> If this Court were to accept Norcini's argument, essentially any officer who is represented by a recognized labor organization which negotiates a CBA would obtain the benefits

---

[7] Act of June 23, 1931, P.L. 932, as amended, 53 P.S. §§35101-39701.

15

of the CBA while employed and then upon retirement bring suit to compel the [c]ity to provide a greater retirement benefit if it was provided by a statute that existed at the time of his retirement, rather than being bound by the retirement provisions contained in the CBA that directly addressed the terms and conditions of his employment. <u>Here, the police pension plan was in place at all times during the course of Norcini's employment, was outlined in the CBA, and was voluntarily entered into by the [c]ity and the [a]ssociation. Neither party to the CBA, nor Norcini has an individual right to reject to the disability pension provisions set forth in the negotiated CBA.</u>

…

<u>Id.</u> at 1246-47. Nevertheless, this Court observed that there are two exceptions to this general rule, explaining (with emphasis added):

> While a party may not assert illegality to avoid compliance with a voluntarily agreed to provision of a CBA, this general rule does not extend to cases <u>where a dispute is resolved in a decision by an arbitrator rather than through a CBA</u>. <u>Municipality of Monroeville v. Monroeville Police Department Wage Policy Committee</u>, 767 A.2d 596 (Pa. Cmwlth. 2001). For example, in <u>Monroeville</u>, the parties were in the process of negotiating a new CBA when a dispute arose regarding whether municipal pension benefits could exceed those provided for in the statute. The parties reached an impasse so the dispute was submitted for arbitration. The arbitrators decided that the disputed provisions could be included in the new CBA, despite the fact that they were inconsistent with the statutorily defined benefits. Because it was the arbitrators' decision to include the provisions in the CBA, rather than a joint agreement of the parties, this Court determined that the municipality could challenge the illegality of the provisions. <u>This Court emphasizes the distinction between an illegality dispute involving a voluntarily entered into CBA and a dispute which is submitted and resolved by arbitration. The present controversy involves a provision of a voluntarily agreed to CBA, and therefore, Norcini was estopped from claiming that the disability pension benefit provision was illegal</u>.

In addition, a second exception to the general rule was carved out by our Pennsylvania Supreme Court in <u>Borough of Ellwood City v. Ellwood City Police Department Wage and Policy Unit</u>, [825 A.2d 617 (Pa. 2003)], where the Court explained that a [CBA] may not incorporate a provision which conflicts with a statutory provision <u>if the statute expressly prohibits such conflicts or provides a remedy should a conflict arise</u>. <u>Unfortunately for Norcini this exception also does not apply</u>.

<u>Id.</u> at 1246 n.4.

Here, the parties' 2013 CBA, which was in effect at the time Perroz sought the disability pension benefit at issue here, states:

5. PERMANENT DISABILITY PENSION BENEFITS

Disability Pension Plan benefits shall begin on the date when a pension plan participant is determined by the Plan Administrator to be incapacitated due to total and permanent disability as defined in the pension plans, even if Extended Sick Leave has not been exhausted. <u>Disability Pension Plan benefits shall be in accordance with the provisions set forth in the Pension Plan for Police</u>.

Joint Stipulation of Facts at ¶21 (citing C.R., Tab 1, Ex. I); R.R. at 33-34. The CBA also states: "Each Police Officer shall be entitled to a pension following … permanent disability, <u>subject to the terms and conditions set forth in the [Plan]</u>." Joint Stipulation of Facts at ¶22 (citing C.R., Tab 1, Ex. I); R.R. at 34 (emphasis added).

In turn, the Plan defines "Total and Permanent Disability" as "a condition of physical or mental impairment due to which a participant is unable to perform the usual and customary duties of [e]mployment, which is reasonably

expected to continue to be permanent for the remainder of the Participant's lifetime and which qualifies the Participant for federal social security disability benefits. …" Joint Stipulation of Facts at ¶19 (citing C.R., Tab 1, Exs. 1, G); R.R. at 33 (emphasis added). In his brief to this Court: "[Perroz] makes no claim that he is unable to obtain gainful employment, and, more specifically, that he would qualify for federal social security disability benefits." Appellant's Am. Br. at 16.

Instead, similar to the petitioner in Norcini, Perroz seeks to avoid the limitations on the definition of "disability" contained in the Plan and incorporated in the CBA in favor of what he claims is the more lenient standard provided for under Act 600 and the Borough Code. Based on Norcini, Perroz cannot do so. More specifically, similar to Norcini, the definition of disability contained in the Plan and incorporated into the CBA was agreed to by the Borough and the police bargaining unit, Perroz served on the police negotiation team "every year," and the police bargaining unit never attempted to change the disability definition contained in the Plan. Joint Stipulation of Facts ¶¶20-21, 23-24; R.R. at 34. Thus, as the Hearing Officer determined:

> 5. The provisions of the [Plan] regarding disability pensions were negotiated and agreed to through the collective bargaining process and were not challenged by the members of the police bargaining unit.
>
> 6. Both the collective bargaining representative of the officers and the members of that unit as well as the Borough are bound by the provisions of the Plan and the Borough may not confer a benefit upon a police officer not provided for in the [CBA].

\* \* \* \*

18

10. The collective bargaining unit and the Borough agreed to be bound by the terms of the [Plan] and specifically agreed that the disability pensions would be governed by the definition in the contract.

11. [Perroz] is, therefore, precluded from now claiming that the disability language in question is contrary to law and is void.

Hr'g Officer's Findings of Fact, Conclusions of Law & Adj., Concls. of Law Nos. 5-6, 10-11; R.R. at 297, 298.

Further, as in Norcini neither of the exceptions to the general rule apply here. First, like Norcini this appeal does not arise from a dispute over the language of a CBA that was submitted and resolved by arbitration (*i.e.*, through interest arbitration); rather, like Norcini, this case involves a CBA reached by voluntary agreement. Additionally, as in Norcini, the CBA here does not "incorporate a provision which conflicts with a statutory provision [where] the statute expressly prohibits such conflicts or provides a remedy should a conflict arise." Id. at 1246 n.4 (emphasis added). Cf. Ellwood City, 825 A.2d at 622 (Court reached a different result because of Act 205's[8] explicit statutory mandate that "in the event of an actual conflict between the statute and a collective bargaining agreement, the statute must be given effect ....").

Nevertheless, Perroz asserts, based on our decision in Ridley Park, he is entitled to the disability pension benefit here. Perroz's reliance on Ridley Park is misplaced.

---

[8] Act 205 refers to the Municipal Pension Plan Funding Standard and Recovery Act, Act of December 18, 1984, P.L. 1005, as amended, 53 P.S. §§895.101–895.803.

19

In particular, in <u>Ridley Park</u>, the borough and the FOP entered into negotiations for a new CBA to replace an existing CBA that was set to expire. During negotiations, the parties reached an impasse over the definition of "disability" for purposes of pension entitlement. For several years prior to the negotiations for the new CBA, the parties' CBA stated a police officer was entitled to a disability pension if the officer was "permanently and totally disabled from performing police work for the [b]orough." <u>Id.</u> at 999. The FOP maintained the new CBA should retain that language, while the borough asserted disability should be defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." <u>Id.</u> The parties submitted the dispute to interest arbitration. Ultimately, an arbitration panel determined disability was to be given the definition the borough proposed. The FOP appealed. A common pleas court struck the award's provision containing the borough's proffered definition of "disability." On further appeal, we affirmed.

We began by noting that the borough's police pension fund was established under Section 1 of Act 600. The borough argued the language implemented by the arbitration panel was proper and there was no language in Section 1 of Act 600 that prohibited such a definition of disability. The borough further asserted, in administering the pension fund, it could prescribe substantial regulations that included defining disability as the arbitration panel did. Responding to these assertions, we noted an arbitration award could not require a governing body to carry out an illegal act and could only require a public employer to do that which it could do voluntarily. We further noted that Section 1 of Act 600 stated, in pertinent part:

20

> Each borough, town, and township of this Commonwealth maintaining a police force of three or more full-time members shall ... establish, by ordinance or resolution, a police pension fund or pension annuity.... *Such fund shall be under the direction of the governing body of the borough, town or township, and applied under such regulations as such governing body, by ordinance or resolution, may prescribe for the benefit of such members of the police force as shall receive honorable discharge therefrom by reason of age and service*, or disability ….

Id. (emphasis in original). Further, Section 1190 of the Borough Code provided for removal of a police officer for, among other things, "disability affecting his ability to continue in service, in which cases the person shall receive an honorable discharge from service." Id. at 1001. As to an honorable discharge for physical disability, pursuant to Section 1190, this Court stated the legislature "intended the disability to be one which rendered the officer incapable of performing his normal duties permanently." Id. (quoting Crawford, 401 A.2d at 388). This Court explained:

> Although the [b]orough may discharge police officers who are permanently disabled from performing police work, it claims that it does not have to then award these officers a pension as long as they are able to engage in 'substantial gainful activity.' The [b]orough admits that it cannot prescribe regulations which contravene Section 3 of [Act 600], 53 P.S. § 769, setting forth age and service requirements for pension eligibility. However, it claims that there are no such statutory restrictions on how disability may be defined for the purposes of pension entitlement. The [b]orough thus argues that it may, pursuant to Section 1 of [Act 600], prescribe a regulation defining disability as was done in … the arbitration award. The [b]orough is thus contending that it may prescribe regulations which would render some police officers, honorably discharged from service pursuant to Section 1190 of [t]he Borough Code, ineligible for pension benefits. We disagree.

21

The pertinent language of Section 1 of [Act 600] provides that a borough employing [three] or more full-time police officers '*shall* ... establish ... a police pension fund or pension annuity.... Such fund shall be under the direction of the governing body of the borough ... and applied under such regulations as such governing body ... may prescribe for the benefit of *such members* of the police force as shall receive honorable discharge therefrom by reason of age and service, or disability....' (Emphasis supplied.)

The clear language of this section mandates that all police officers honorably discharged for age and service, or disability, be eligible to receive a pension. It does not permit the [b]orough to prescribe regulations which would redefine pension eligibility. Therefore, as long as the [b]orough may honorably discharge a police officer who is disabled from performing police work, it may not deny that officer a pension simply because he is able to obtain other employment constituting 'substantial gainful activity.'

Indeed, if we were to accept the [b]orough's argument that Section 1 of [Act 600] authorizes it to prescribe regulations rendering some police officers honorably discharged for disability ineligible to receive a pension, we would have to find that it could likewise do the same with regard to those police officers honorably discharged for age and service. This is because the language in Section 1 of [Act 600], authorizing [b]orough regulations, is equally applicable to both categories of honorable discharge. Certainly we cannot say that the Legislature intended to permit the [b]orough to withhold pensions from those police officers who reached the mandatory retirement age and who served the minimum number of years on the force and are, therefore, entitled to a pension under Section 3 of [Act 600].

Id. 1001. Thus, we affirmed the common pleas court's conclusion that the arbitration panel exceeded its authority by including the challenged language in the award.

Critically, unlike Ridley Park, the case presently before us does not concern a challenge to an interest arbitration award involving the legality of a CBA provision fashioned by an arbitration panel. Rather, in this case, Perroz seeks to avoid the limitation on "disability" contained in the Plan and incorporated into the CBA despite the fact that the challenged provision was negotiated and agreed to by the Borough and the police bargaining unit, the police bargaining unit never attempted to alter the disability definition contained in the Plan and Perroz served on the police negotiation team "every year." Joint Stipulation of Facts ¶¶20-21, 23-24; R.R. at 34; see also Hearing Officer's Findings of Fact, Conclusions of Law & Adj., Concls. of Law Nos. 5-6, 10-11. As set forth above, based on Norcini, he may not do so.

Further, unlike in Ridley Park, where the parties' prior CBA stated a police officer was entitled to a disability pension if the officer was disabled from performing police work, here there is no indication that the definition of disability set forth in the Plan that requires that a Plan participant qualify for federal social security disability benefits in order to obtain a disability pension benefit, previously differed from the current definition. Compare R.R. at 180 (2008 CBA, covering the period from January 1, 2009 through December 31, 2013, Article XXI ("Pension Benefits"); and R.R. at 200 (October 14, 1968 Borough of Fox Chapel Police Pension Plan (As Amended) setting forth definition of "Total and permanent disability") with R.R. at 191 (2013 CBA, covering the period from January 1, 2014 through December 31, 2017, Article XIX(5) "Permanent Disability Pension Benefits") and R.R. at 146 (January 1, 2012 Borough of Fox Chapel Police Pension Plan setting forth definition of "Total and Permanent Disability"); Joint

23

Stipulation of Facts at ¶24; R.R. at 34 (police bargaining unit never tried to change the Plan's disability definition). As such, Ridley Park does not compel the result Perroz seeks here.[9]

## B. Due Process
## 1. Contentions

Perroz next asserts the Borough violated his constitutional due process rights by failing to provide a neutral and detached hearing officer. Perroz argues he had rights with regard to his vested pension benefits, and these rights could not be interfered with absent due process. Nevertheless, he contends he was not afforded a detached and disinterested fact-finder. Instead, Perroz maintains, his rights were deprived by a biased and interested party. In affirming the hearing officer's improper findings, Perroz argues, the trial court upheld the unconstitutional deprivation of his property interests.

As they are a property right, Perroz argues, an employee's pension rights may not be altered except by due process of law. Stuart v. Flynn, 380 F. Supp. 424, 426 (W.D. Pa. 1974). He maintains due process rights attach in administrative proceedings. Kreiger v. City of Phila., Bd. of Pensions & Ret., 408 A.2d 170 (Pa. Cmwlth. 1979). Constitutional due process requires a "neutral and detached judge in the first instance." Ward v. Vill. of Monroeville, 409 U.S. 57, 62 (1972). That mandate is no different when a legislative body delegates

_____

[9] Although in Wright v. Lower Salford Township Municipal Police Pension Fund, ___ A.3d ___ (Pa. Cmwlth., No. 1343 C.D. 2015, filed April 1, 2016), we recently applied our holding in Ridley Park Police v. Borough of Ridley Park, 524 A.2d 998 (Pa. Cmwlth. 1987), Wright did not involve a situation in which a party voluntarily agreed to a provision in a collective bargaining agreement and later sought to disavow it on the basis of illegality.

24

adjudicative functions to a private party. See Schweiker v. McClure, 456 U.S. 188 (1982).

Before one may be deprived of a protected interest, whether in a criminal or civil setting, Perroz argues, he is entitled as a matter of due process to an adjudicator who is not in a situation "which would offer a possible temptation to the average man as a judge … or which might lead him not to hold the balance nice, clear and true …." Ward, 409 U.S. at 60 (quoting Tumey v. Ohio, 273 U.S. 510, 532 (1927)) (internal citations and quotations omitted). Perroz asserts he has a protected property interest in his disability pension benefits to which he is entitled. See Basciano v. Herkimer, 605 F.2d 605 (2d Cir. 1978); McDarby v. Koch, 725 F. Supp. 151 (S.D. N.Y. 1989).

Perroz further maintains that, as interpreted in Pennsylvania, disability retirement benefits cannot be denied without an administrative hearing that complies with all procedural due process requirements. Kreiger. Due process requires a fair hearing. Horn v. Twp. of Hilltown, 337 A.2d 858 (Pa. 1975). "Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome …." Id. at 860.

Here, Perroz points out, the Plan Administrator initially denied his disability pension benefit application. He sought review of that decision, and a hearing was held in Borough Council Chambers at the Borough Municipal

25

Building. The Borough hired Ira Weiss, Esquire, a private party, to serve as hearing officer. Perroz asserts that Weiss, therefore, had a pecuniary interest in ruling in favor of the Borough that created at least a possible temptation to find Perroz ineligible for his pension benefits. See Ward. Perroz argues it is likely no coincidence that Weiss ruled in favor of the Borough, his employer for these purposes, and against Perroz, to whom he owed nothing. Perroz acknowledges there is no direct evidence that Weiss' decision was the product of bias, but he argues, even the potential temptation for Weiss to rule in the Borough's favor and his own pecuniary interest disqualifies him as a neutral and detached judge. Id.

Therefore, Perroz maintains, his constitutional due process right to a neutral and detached judge at his pension review hearing was violated, and the Borough's pension eligibility determination should be reversed for this reason as well. 2 Pa. C.S. §754(b); Sparacino v. Zoning Bd. of Adjustment, City of Phila., 728 A.2d 445 (Pa. Cmwlth. 1999) (court can reverse agency determination where constitutional rights were violated).

Perroz argues the trial court affirmed Weiss' improper findings, and it ignored this impropriety. Because the trial court based its opinion on the findings of an unfair hearing that deprived Perroz of his rights without due process, Perroz asserts, the trial court's findings were also in error; thus, its findings and order must be reversed.

### 2. Analysis

At the outset, there is no indication that Perroz raised this issue either at the hearing before the hearing officer, R.R. at 66-80, or in his proposed findings

of fact and conclusions of law submitted after the hearing. See C.R., Tab 10. Further, in his statutory appeal to the trial court, although Perroz vaguely asserted Borough Council's decision "deprived [Perroz] of his constitutionally protected property interest without the necessary due process," Perroz made no specific mention of the issue he now raises concerning the neutrality of the hearing officer. C.R., Item #1 at ¶15. Section 753(a) of the Local Agency Law incorporates the waiver doctrine by requiring *all* legal questions be raised before the administrative agency hearing the appeal. See 2 Pa. C.S. §753(a); Roomet v. Bd. of License & Inspection Review, 928 A.2d 1162 (Pa. Cmwlth. 2007). Thus, Perroz's failure to raise this issue before Borough Council results in waiver.

However, even if properly preserved, we would reject Perroz's assertion. Indeed, we rejected a similar argument in Krenzel v. Southeastern Pennsylvania Transportation Authority, 840 A.2d 450 (Pa. Cmwlth. 2003). There, following a pre-termination hearing, the Southeastern Pennsylvania Transportation Authority (SEPTA) terminated one of its employees. The employee requested a post-termination hearing. SEPTA appointed a retired common pleas court judge to conduct the post-termination hearing. After the hearing and issuance of the decision, the employee appealed to the common pleas court. The common pleas court determined, among other things, because SEPTA selected and paid the hearing officer to preside over a question of SEPTA's treatment of an employee, there was an "appearance" that the employee was deprived of a hearing before an impartial tribunal. Id. at 453. Thus, the common pleas court remanded for a post-termination hearing before an impartial fact-finder. On SEPTA's appeal, this Court held the trial court erred on this issue, stating (with emphasis added):

27

The first substantive issue is whether SEPTA's appointment of Judge Goldman as hearing officer violated due process. The trial court acknowledged that it had no reason to question Judge Goldman's integrity and, presumably, his impartiality. Nevertheless, the trial court held that there was an appearance of impropriety. The trial court reasoned that [the employee's] right to an impartial tribunal was compromised where, as here, the propriety of actions taken by SEPTA would be decided by a person selected and compensated by SEPTA. Indeed, the trial court noted that SEPTA may hire Judge Goldman in the future, and it found the existence of this potentially on-going employment relationship to taint [the employee's] post-termination hearing.

These circumstances are present, however, in virtually every case where an administrative hearing is conducted by the agency to review the agency's action. The premise of the trial court's holding is that SEPTA cannot review, and correct, its own decision. However, that is the very purpose of the administrative hearing, and we cannot presume its futility. Canonsburg General Hospital v. Department of Health, [422 A.2d 141 (Pa. 1980)]. It has long been understood that a combination of the functions of investigation, prosecution and adjudication within a single agency does not violate due process. See Withrow v. Larkin, [421 U.S. 35] (1975); State Dental Council and Examining Board v. Pollock, [318 A.2d 910 (Pa. 1974)]. However, due process does require a separation of functions within the agency, which is achieved when the inconsistent functions of prosecution and adjudication are assumed by different individuals within the agency. See, e.g., Stone & Edwards Insurance Agency v. Department of Insurance, [648 A.2d 304 (Pa. 1994)]; Marchionni v. Southeastern Pennsylvania Transportation Authority, 715 A.2d 559, 563-564 (Pa. Cmwlth. 1998). Such 'walls of division' eliminate any 'threat or appearance of bias.' Lyness v. State Board of Medicine, [605 A.2d 1204, 1209 (Pa. 1992)].

Here, the function of prosecution was separated from the function of adjudication. Outside counsel was hired to represent SEPTA, and Judge Goldman was appointed to adjudicate [the employee's] claims. This satisfied due process. Accordingly, we hold that the trial court erred. An appearance of impropriety cannot be inferred from the mere fact that

28

> SEPTA appointed and compensated the hearing officer assigned to adjudicate [the employee's] claims against SEPTA.

Id. at 454-55 (footnote omitted).

Here, as in Krenzel, we will not infer an appearance of impropriety from the mere fact that Borough Council appointed and compensated Attorney Weiss to evaluate Perroz's challenge to the Plan Administrator's denial of his disability pension benefit. Id. Further, as in Krenzel, the function of prosecution was separated from the function of adjudication. To that end, Attorney Weiss served as hearing officer to evaluate Perroz's claims, while separate counsel appeared on behalf of the Plan. This satisfied due process. Id.

Moreover, while Attorney Weiss issued findings of fact, conclusions of law and an adjudication, before approving Attorney Weiss' decision, all Borough Council members reviewed the record as well as Attorney Weiss' decision and, therefore, had the opportunity to correct any perceived error.[10]

---

[10] Indeed, Borough Council's decision states, as relevant:

**RESOLUTION 600**

**RESOLUTION OF THE COUNCIL OF THE BOROUGH OF FOX CHAPEL ADOPTING FINDINGS OF FACT, CONCLUSIONS OF LAW AND ADJUDICATION REGARDING [PERROZ].**

WHEREAS, a hearing was held … involving the [a]ppeal of [Perroz] from the denial of a disability pension by the Plan Administrator; and

WHEREAS, Ira Weiss, Esquire, legal advisor and Hearing Officer, has presented proposed Findings of Fact, Conclusions of Law and Adjudication which have been reviewed with Council; and

WHEREAS, all members of Council have read the transcript and exhibits.

**(Footnote continued on next page…)**

29

For these reasons, we conclude that, even if properly preserved, we could not afford Perroz relief on this issue.

## C. Public Policy
## 1. Contentions

As a final point, Perroz contends public policy strongly favors a grant of pension benefits here. He argues the Borough accepts state funding for his participation in the Plan. Yet, he asserts, the Borough maintains sole discretion to honorably discharge an officer, injured in the line of duty, by reason of physical disability. Perroz maintains this result cannot possibly be the intent of the legislators or the officers of the Borough's Police Department. Therefore, the Borough's denial of his disability pension benefits in favor of its own pecuniary interests is against public policy, is an error of law, and should be reversed.

Perroz asserts that, in assessing the inequity of the trial court's decision, it is essential to understand the nature and purpose of pension benefits for public servants:

> Pensions are designed for the protection against economic insecurity, not only of the employee, but also of the employee's

---

**(continued…)**

> NOW, THEREFORE, be it resolved and it is hereby resolved as follows:
>
> 1. The Findings of Fact, Conclusions of Law and Adjudication submitted by Ira Weiss, Esquire, Hearing Officer are hereby approved.
>
> 2. The Appeal of [Perroz] is denied and the decision of the Plan Administrator denying disability pension benefits is hereby affirmed. …

R.R. at 291.

30

> family. One of the primary objectives in providing them is to induce competent persons to enter and remain in public employment and to render efficient service while in the employed publicly. It has also been said that a pension granted to a public employee is not a gratuity but is deferred compensation for services rendered.

3 MCQUILLIN MUNICIPAL CORPORATIONS §12:173.36 (3d ed.).

Here, Perroz contends, allowing a borough to deny an officer who is physically unable to perform police work his disability pension would violate public policy. First, the Plan receives state funding based on the number of officers it covers. Further, the Plan benefits from an offset of the pension for any social security disability payments arising from the same injuries that qualify an officer for a disability pension, so, effectively, every disability pension the Borough grants is less than full value. He argues that dramatically less Plan participants would qualify for federal social security disability benefits arising out of their work injuries as compared to those who are unable to physically perform police duties as a result of the more stringent social security disability standard. Perroz maintains that, even if he did qualify for social security disability, his disability pension benefits would be offset, which only profits the Plan into which he paid for almost 24 years.

## 2. Analysis

As with Perroz's claim that Borough Council's appointment of the hearing officer violated his due process rights, there is no indication that Perroz raised an issue that public policy entitled him to the disability pension benefit he seeks either at the hearing before the hearing officer, R.R. at 66-80, or in his

proposed findings of fact and conclusions of law submitted after the hearing. See C.R., Tab 10. Further, Perroz did not raise this issue in his statutory appeal to the trial court. C.R., Item #1. Thus, this issue is waived. 2 Pa. C.S. §753(a); Roomet.

Nevertheless, even if not waived, Perroz's argument fails. To that end, in an analogous, unreported decision, [11] we explained: "Having voluntarily agreed to a pension benefit that is less than that available under the applicable statute, [the claimant] and the [u]nion cannot now claim that that very same provision in the CBA is illegal or void as against public policy." Haines v. City of Warren (Pa. Cmwlth., No. 2333 C.D. 2006, filed April 17, 2008), Slip Op. at 7, 2008 WL 9408140 at *4 (unreported) (emphasis added). This statement applies with equal force here.

Moreover, Perroz's assertions on this point fail to differentiate between the denial of his *disability* pension benefit and a scenario in which a Plan participant is denied a *regular* retirement pension benefit. Perroz suffered no deprivation of his *regular* retirement pension benefit here; in fact, at the hearing, Perroz testified he would reach his normal retirement date and begin receiving a regular pension benefit as of August 2015. R.R. at 71.

Further, while Perroz points to the fact that the Plan receives state aid, he offers no support for his assertion that this fact compels approval of the disability pension benefit he seeks here. Additionally, although Perroz takes issue

---

[11] Pursuant to Commonwealth Court Internal Operating Procedure 414, 210 Pa. Code §69.414, an unreported panel decision of this Court, issued after January 15, 2008, may be cited for its persuasive value.

with the fact that a Plan participant's receipt of a disability pension benefit is offset by the receipt of federal social security benefits, this offset is specifically provided for in Section 5(e)(1) of Act 600, which states:

> (e)(1) In the case of the payment of pensions for permanent injuries incurred in service, the amount and commencement of the payments shall be fixed by regulations of the governing body of the borough, town, township or regional police department and shall be calculated at a rate no less than fifty per centum of the member's salary at the time the disability was incurred, provided that any member who receives benefits for the same injuries under the Social Security Act (49 Stat. 620, 42 U.S.C. § 301 et seq.) shall have his disability benefits offset or reduced by the amount of such benefits.

53 P.S. §771(e)(1) (emphasis added).

Finally, while Perroz suggests the Borough denied his disability pension benefit in order to aid its pecuniary interests, he cites no record evidence in support of this claim. In Shields v. Brentwood Borough (Pa. Cmwlth., No. 81 C.D. 2013, filed January 29, 2014), Slip Op. at 16, 2014 WL 316589 at *8 (unreported), we rejected a similar assertion, stating: "As for [the claimant's] assertion that [the borough's pension plan administrator] denied his request because the [b]orough could not afford to pay him benefits, this Court rejects this argument because it is nothing more than speculation and without support in the record."

Based on the foregoing, we affirm.

_____
ROBERT SIMPSON, Judge

33

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William J. Perroz, : 
                    Appellant : 
                     : No. 1133 C.D. 2015
v. : 
                     : 
Fox Chapel Borough : 

# O R D E R

**AND NOW**, this 13th day of July, 2016, the order of the Court of Common Pleas of Allegheny County is **AFFIRMED**.


_____
ROBERT SIMPSON, Judge